### STANDARD PAVING CO. et al. v. COMMISSIONER OF INTERNAL REVENUE.

### STANDARD PAVING CO. v. COMMISSIONER OF INTERNAL REVENUE.

Nos. 4145, 4146.

United States Court of Appeals
Tenth Circuit.

June 26, 1951.

Roger S. Randolph, Tulsa, Okl. (Conner, Winters, Lee & Randolph, Tulsa, Okl., on the brief), for petitioners.

Irving I. Axelrad, Washington, D. C. (Theron Lamar Caudle, Asst. Atty. Gen., Ellis N. Slack, A. F. Prescott, Special Assts. to the Atty. Gen. on the brief), for respondent.

Before HUXMAN, MURRAH, and PICKETT, Circuit Judges.

PICKETT, Circuit Judge.

These cases are before us upon petitions to review a decision of the Tax Court, 13 T.C. 425. They involve identical questions and are presented in a consolidated record and will be considered together in this opinion. The Tax Court determined deficiencies in the federal declared value excess profits tax and excess profits tax of Standard Paving Company, a dissolved Oklahoma corporation, herein referred to as Oklahoma Standard, for the taxable period January 1, 1942, to September 20, 1942. The business of Oklahoma Standard was that of a general contractor constructing various public works such as roads, streets, bridges, dams and airports. Its stock was all owned by Standard Bond and Investment Company, a Delaware corporation. Both corporations were on the accrual basis of accounting but reported income from long term construction contracts on a completed contract basis.

On September 20, 1942, Oklahoma Standard was in the process of completing three construction contracts entered into as coadventures with other construction companies and which will be referred to as Gruber, Dalhart and Memorial Boulevard projects. On this date, Oklahoma

Standard, in a tax free reorganization, transferred all its assets subject to its liabilities to the parent company which, on that date, changed its name to the Standard Paving Company and will be referred to herein as Delaware Standard. All the stock of Oklahoma Standard was surrendered and cancelled and the corporation dissolved. Delaware Standard completed the contracts.

Prior to the reorganization, Oklahoma Standard had received substantial progress payments from the three projects.[1] The contracts were not fully completed and final payment was not made until some time later. Except for the Memorial Boulevard contract, which is now claimed to have been a mistake, Oklahoma Standard in its 1942 return reported no income from any of these contracts, while Delaware Standard reported the entire profit from the same for the year in which the contracts were completed. In his deficiency notice, the Commissioner accepted the company's determination of the profit made on these three projects and computed the percentage of the completion as of the date of the reorganization. He then allocated that percentage of the total profit on the contracts to the income of Oklahoma Standard for the year 1942. It is acknowledged that the taxpayers in determining their income might use the completed contract method which prompts the theory of the taxpayers that Oklahoma Standard had no income on the date of the reorganization and that to permit such an allocation would create a tax in a tax free reorganization under Sec. 112(b) (6) of the Internal Revenue Code, 26 U.S.C.A. § 112. The Commissioner's position is that in these cases the strict application of the completed contract method does not clearly reflect the income of Oklahoma Standard for the year 1942 and that he had the right under Secs. 41 and 42 of the Internal Revenue Code to use a method which would properly reflect that income. The right to do this is the primary question presented by these petitions.

■ Sec. 41 of the Internal Revenue Code (26 U.S.C.A.1946 Ed. § 41), provides that if the method of accounting regularly employed by the taxpayer does not clearly reflect the income, the computation shall be made in accordance with such method as, in the opinion of the Commissioner, does clearly reflect the income.[2] The statute gives the Commissioner broad discretion in adopting a method which he believes properly reflects the income of the taxpayer. Brown v. Helvering, 291 U.S. 193, 54 S.Ct. 356, 78 L.Ed. 725; Lucas v. American Code Co., 280 U.S. 445, 449, 50 S.Ct. 202, 74 L.Ed. 538; Jud Plumbing and Heating Company v. Commissioner, 5 Cir., 153 F.2d 681; Carver v. Commissioner, 10 T.C. 171, affirmed 6 Cir., 173 F.2d 29. His selection of such a method may be challenged only upon a clear showing that he had abused his discretion. Brown v. Helvering, supra; Lucas v. American Code Company, supra; William Hardy, Inc., v. Commissioner, 2 Cir., 82 F.2d 249. The method of accounting employed by a taxpayer is never conclusive and a method should be adopted either by the taxpayer or by the Commissioner whereby the income is taxed to the person who earns it. Helvering v. Eubank, 311 U.S. 122, 61 S.Ct. 149, 85 L.Ed. 81; Helvering v. Horst, 311 U.S. 112, 61 S.Ct. 144, 85 L.Ed. 75; Lucas v. Earl, 281 U.S. 111, 50 S.Ct. 241, 74 L.Ed. 731; Jud Plumbing

1. Gruber Project: The joint venture had received $2,209,845.96; Dalhart Project: $256,735.16; Memorial Boulevard Project: $81,249.37.

2. 26 U.S.C.A. § 41: "The net income shall be computed upon the basis of the taxpayer's annual accounting period (fiscal year or calendar year, as the case may be) in accordance with the method of accounting regularly employed in keeping the books of such taxpayer; but if no such method of accounting has been so employed, or if the method employed does not clearly reflect the income, the computation shall be made in accordance with such method as in the opinion of the Commissioner does clearly reflect the income. If the taxpayer's annual accounting period is other than a fiscal year as defined in section 48 or if the taxpayer has no annual accounting period or does not keep books, the net income shall be computed on the basis of the calendar year."

and Heating Company v. Commissioner, supra. The Commissioner accepted the taxpayer's computation of the profit earned on the completed contracts. The percentage of the completion of the contracts at the date of the reorganization is not questioned, neither is it disputed that Oklahoma Standard had actually earned substantial profits and had received large payments of money upon these contracts prior to the date of the reorganization. It is sought to avoid this income to the corporation which earned it and which actually received a large portion of it because of a system of accounting adopted by Oklahoma Standard. To permit this would enable the parent corporation to evade tax by dissolving a subsidiary which had realized income from incompleted long term contracts. We are of the view that the Commissioner not only acted within his statutory authority but that the method adopted was fair to the taxpayer. The identical question was determined by the Fifth Circuit in Jud Plumbing and Heating Company v. Commissioner, supra, where it was said, 153 F.2d at page 684:

"It should be apparent that a corporation, by a transfer of all of its assets and liabilities, cannot absolve itself from liability for income taxes due to the United States, and that any right to an exemption from reporting income received by the taxpayer must be found in the federal law, rather than in the acts of the taxpayer.

"A corporation being a separate legal entity, its net earnings, whether ascertained or not, belong to it, and the tax upon unexempt income in each taxable year is chargeable to it, Sec. 13(b) Internal Revenue Code, 26 U.S.C.A.Int.Rev.Code, § 13(b), and this liability cannot be discharged by the simple expedient of dissolution and the turning over of all its assets, including current and unreported income, to its sole stockholder, even though such corporation receives no money consideration for the transfer of such income.

It is the actuality of income rather than its disposition that is important in determining the tax consequence."

The taxpayer also complains that the determination of income based upon a percentage of the collection of the total profit realized from the contracts takes into consideration indefinite amounts to be derived from money retained under the contract such as liquidated damages, renegotiation, and change orders, which could not have been received by Oklahoma Standard at the date of reorganization. It is said that conceding Oklahoma Standard's liability for the tax on earned income as of the date of reorganization, the only accurate method of determining such income is to ascertain Oklahoma Standard's income and deduct therefrom the accrued costs as of that date. This might be one way of computing the income but it is not the method selected by the Commissioner and we are of the view that the Commissioner's method is simple and accurate. The Tax Court, after hearing the evidence, was of the opinion that the work on the projects at the date of reorganization had reached a certain percent of completion.[3] In arriving at the tax liability the total net profit as computed by Delaware Standard on the completed contracts was multiplied by these percentages.

Petitioners further contend that if Oklahoma Standard did realize income as of September 20, 1942, then any operating losses sustained by Delaware Standard can be carried back through the reorganization to Oklahoma Standard as a net operating loss deduction under Secs. 23 (s) and 122, 26 U.S.C.A. §§ 23, 122.

To entitle a taxpayer to deductions in income tax liability, it must bring itself clearly within the statutory provisions. White v. United States, 305 U.S. 281, 292, 59 S.Ct. 179, 83 L.Ed. 172; Jones v. Noble Drilling Co., 10 Cir., 135 F.2d 721, 724. This we think the taxpayer here

---

3. Gruber Project, 91.34%, Dalhart Project, 76.66%, Memorial Boulevard Project, 98.67%.
   These percentages were different from those used by the Commissioner in his determination but no change was made by the Tax Court in the method of accounting adopted by the Commissioner.

334

has failed to do. Oklahoma Standard, an entity separate from its successor, ceased to exist upon the date of dissolution. It is a basic concept of taxation that the only person who can take a net operating loss deduction is the taxpayer who sustained the loss and therefore a successor corporation is not entitled to deduct the losses of its predecessor even though it had assumed all of the liabilities of the predecessor. New Colonial Ice Co. v. Helvering, 292 U.S. 435, 54 S.Ct. 788, 78 L.Ed. 1348; Weber Flour Mills Co. v. Commissioner, 10 Cir., 82 F.2d 764; May Oil Burner Corp. v. Commissioner, 4 Cir., 71 F.2d 644; Shreveport Producing & Refining Co. v. Commissioner, 5 Cir., 71 F.2d 972, certiorari denied 293 U.S. 616, 55 S.Ct. 148, 79 L.Ed. 705; Athol Mfg. Co. v. Commissioner, 1 Cir., 54 F.2d 230; see also Anno. 9 A.L.R.2d 412. We think the rule applies conversely, which would prohibit Oklahoma Standard from deducting losses sustained by Delaware Standard.

The decisions of the Tax Court are Affirmed.