ALDEN CHARLES PALMER AND TENA LEONORA PALMER, HUSBAND AND WIFE, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 41375. Filed October 30, 1957.

*Alden Charles Palmer*, for the petitioners.
*Joseph G. White, Jr., Esq.*, for the respondent.

158

162

168

**OPINION.**

TURNER, *Judge:* The general rule for accounting for and reporting income as stated in section 42 (a) of the Internal Revenue Code of 1939, is that "[t]he amount of all items of gross income shall be included in the gross income for the taxable year in which received by the taxpayer, unless, under methods of accounting permitted under section 41, any such amounts are to be properly accounted for as of a different period." In section 41 so referred to, it is provided that "[t]he net income shall be computed upon the basis of the taxpayer's annual accounting period * * * in accordance with the method of accounting regularly employed in keeping the books of such taxpayer; but if no such method of accounting has been so employed, or if the method employed does not clearly reflect the income, the computation shall be made in accordance with such method as in the opinion of the Commissioner does clearly reflect the income." Under these provisions other methods of accounting, including accrual accounting and the numerous variations thereof, as well as cash receipts and disbursements accounting, are recognized so long as in the opinion of the Commissioner the particular method employed clearly reflects the income.

Pursuant to and under the above statutory provisions, the Commissioner has provided by regulation, section 29.42–4 of Regulations 111,[5] that taxpayers whose income is derived, in whole or in part, from long-term contracts may, as to such income, prepare their returns upon "either" of two stated bases. On one basis, commonly referred to as the percentage of completion basis, the gross income from such contracts is to be reported according to the percentage of completion during the taxable year of the entire work to be performed under the contract. By the other, commonly referred to as the completed contracts method, the gross income under the contract is to be reported in full "for the year in which the contract is finally completed and accepted." The right to report contract profits by the completed contracts method is conditioned, however, on an election by the taxpayer "as a consistent practice so to treat such income," and there is the further proviso that "such method clearly reflects the net income." The term "long-term contracts" is defined by the regulation to mean building, installation, or construction contracts covering a period in excess of 1 year from the date of execution of the contract to the date on which the contract is finally completed and accepted.[6] Both of the above methods of accounting for and reporting long-term contract income are forms of accrual accounting and reporting. By the percentage of completion method, the indicated profit under the contract is accrued ratably according to the percentage of completion during the taxable year of the entire work under the contract, while by the completed contracts method, the entire profit accrues in the year

[5] Sec. 29.42–4. LONG-TERM CONTRACTS.—Income from long-term contracts is taxable for the period in which the income is determined, such determination depending upon the nature and terms of the particular contract. As used in this section the term "long-term contracts" means building, installation, or construction contracts covering a period in excess of one year from the date of execution of the contract to the date on which the contract is finally completed and accepted. Persons whose income is derived in whole or in part from such contracts may, as to such income, prepare their returns upon either of the following bases:

(a) Gross income derived from such contracts may be reported upon the basis of percentage of completion. In such case there should accompany the return certificates of architects or engineers showing the percentage of completion during the taxable year of the entire work to be performed under the contract. There should be deducted from such gross income all expenditures made during the taxable year on account of the contract, account being taken of the material and supplies on hand at the beginning and end of the taxable period for use in connection with the work under the contract but not yet so applied.

(b) Gross income may be reported for the taxable year in which the contract is finally completed and accepted if the taxpayer elects as a consistent practice so to treat such income, provided such method clearly reflects the net income. If this method is adopted there should be deducted from gross income all expenditures during the life of the contract which are properly allocated thereto, taking into consideration any material and supplies charged to the work under the contract but remaining on hand at the time of completion.

A taxpayer may change his method of accounting to accord with paragraph (a) or (b) of this section only after permission is secured from the Commissioner as provided in section 29.41–2.

[6] The above two methods have long been established and recognized as proper methods for accounting for and reporting income from long-term contracts. See article 121 of Regulations 33, promulgated under the Revenue Acts of 1916 and 1917.

in which the contract is completed. On neither basis must there be actual payment or a right to require payment in the taxable year.

The partnership return filed for the period ended August 31, 1948, the entire period of the partnership's existence and operations, did not take into account or report any of the payments which had been received on account under the Santa Anita contract, or any part of the $961,900.42 covering the expenditures which had been incurred in its performance under the contract and carried as an asset item in that amount as construction in process. Although it was stated thereon that the return was prepared on a cash basis, it was not a cash basis return, but was a return prepared pursuant to the completed contracts method of reporting contract income, the purpose being that the profits under the Santa Anita contract be reported in toto as the income of Palmer & Company for the year all work under the contract should be completed. The evidence shows that all of the houses were completed and notices of completion had been recorded by the end of December 1948, and Palmer & Company, which had been organized on September 1, 1948, and which as of that date had acquired the assets of the partnership and the stock of Oklahoma Construction in nontaxable transfers, prepared and filed a consolidated return with Oklahoma Construction for the fiscal year ended August 31, 1949, in which, by the completed contracts method, it did account for and report in full the profits under the Santa Anita contract and similarly claimed deductions for the losses sustained by Oklahoma Construction on the Stillwater projects.

Determining that such a reporting of the profits under the Santa Anita contract did not properly or clearly reflect the respective earnings of the partnership and Palmer & Company thereunder, the respondent has allocated the said profits between the partnership and Palmer & Company in such amounts as in his opinion did fairly reflect their respective earnings under the contract. In so doing, he determined that the partnership, for the fiscal period ended August 31, 1948, realized that portion of the total profits under the contract that its costs in performing the contract through that date bore to the total costs, excluding from such allocation, however, both the costs and the profits under the supplemental authorization by Santa Anita to Palmer & Company, under date of June 20, 1949, which was after the date of the filing of formal acceptance by Santa Anita of the work under the contract, and in which the partnership never participated. The apparent effect of this determination was to shift the accounting for and reporting of the income under the contract from the completed contracts method to the percentage of completion method, the other method prescribed by the above regulation for reporting long-term contract income.

It is well settled that a taxpayer may make changes in the conduct of his business and plan and execute his transactions in such manner as will, in respect of operations and transactions thereafter occurring, result in a minimum of tax under the law. On the other hand, it is equally well settled that income is taxable to the earner thereof, and this rule has been declared and applied in cases where contemporaneously with the earning or accrual of income, such income, by prior anticipatory assignment, might belong to or be the property of another. See *Lucas* v. *Earl*, 281 U. S. 111; *Helvering* v. *Horst*, 311 U. S. 112; *Helvering* v. *Eubank*, 311 U. S. 122; and *Harrison* v. *Schaffner*, 312 U. S. 579. The question here, however, is as to the earnings for a period prior to any transfer or assignment, whether anticipatory or fully executed, and is whether a contractor in the process of completing the work under a long-term contract may, by the transfer to another of his or its assets, including the contract, and by the filing of a return for the period ending with the transfer on the completed contracts basis, obviate or be relieved of any and all obligations ever to account for and report, for income tax purposes, the earnings properly attributable to the work done up to the time of the transfer.

That a substantial profit was earned on the Santa Anita contract and much the greater portion of the work done and the expenses incurred in the earning of those profits was done by and were those of the partnership, not Palmer & Company, are all established by the evidence. At or prior to September 1, 1948, 80 of the 159 houses constructed under the contract had been completed and notices of completion had been filed. The remaining houses were in process of construction and in less than 4 months thereafter they likewise had been completed. The facts further show that the 80 houses which had been completed at or prior to September 1, 1948, included all 46 houses comprising group 1. The amount of the recompense to be paid by Santa Anita and to be received by the contractor was in a fixed amount for each individual house, and while we are not advised as to the date when all of the payments were finally made, it was on such contract price that Palmer & Company accounted for and reported the profits in the succeeding fiscal year, by the completed contracts method, and there is no claim that the total profits under the contract as so computed were not correct in amount. Also it would follow, we think, that upon completion of the 80 houses in question the costs of construction thereof had likewise become fixed and determined and the profit thereon was then determinable. Furthermore, by the terms of the contract, the construction of the houses was to be by groups, and the obligations of the parties with respect to the houses in one group were not dependent upon the car-

rying out of the contract with respect to the other groups. It would thus appear that whatever may have been the case with respect to those of the 80 completed houses which were in the groups not yet completed, the profits on the houses in group 1 had not only been earned in the period ended August 31, 1948, but, absent the long-term contract, would by an accrual method of accounting have constituted taxable income for such period. The facts further show that not only had a major portion of the physical construction on all of the houses been accomplished by the partnership prior to its termination, but that the costs incurred in the performance of its work under the contract amounted to $961,900.42 out of ultimate total costs for the entire contract of $1,268,587.98. And there is no showing that from a practical or common sense standpoint, or on the percentage of completion basis, the expenditures of the partnership in the course of its operations under the contract could not and did not reasonably reflect the earning of a comparable portion of the total profit. See, in that connection, *Jud Plumbing & Heating* v. *Commissioner*, 153 F. 2d 681, affirming 5 T. C. 127.

Being a long-term contract, the partnership was privileged under the above regulation to account for and report the contract profits on the basis of the percentage of completion during the taxable period of the entire work to be performed under the contract, or, subject to specified conditions, by the completed contracts method. Prerequisite to the accounting for and reporting of such profits by the completed contracts method, however, the partnership must have elected as a "consistent" practice so to treat such income, and that method, when used, must "clearly reflect" the net income. Certainly, on the facts of this case, the partnership had not, and in the circumstances, could not have, established a consistent practice of treating long-term contract profits by the completed contracts method of accounting for and reporting its income. At the time of its termination it had not been in existence for quite a full year, and the Santa Anita contract then in process was, insofar as appears, its one and only long-term contract, and when its one and only return was filed, indicating a purpose to account for and report the profits of the said contract by the completed contracts method, the partnership had already been dissolved, its business and assets had been transferred to another entity, and even the power to establish a consistent practice of reporting long-term contract income by the completed contracts method no longer existed. It was in these circumstances that the respondent, having first determined that the completed contracts method of reporting income did not clearly reflect the income of the partnership under the Santa Anita contract for the period of its existence and operations, which clear reflection of income was

likewise a prerequisite under the regulation to the use of the completed contracts method of reporting long-term contract income, determined that that portion of the total contract profits which the costs incurred by the partnership in its work under the contract bore to the total contract costs, represented the reportable income of the partnership for the period of its operations.

It is the contention of the petitioner, on brief, that the partnership, by reason of unresolved contingencies at the time it was terminated, never received or realized any income under the contract on either a cash or accrual method of accounting, and such being the case, all of the contract profits were as a matter of fact and law the income of Palmer & Company in its fiscal year ended August 31, 1949, during which the work under the contract was completed, and since under the statute income must be accounted for and reported on an annual basis, the respondent may not, under the provisions of section 41, by allocation, require the partnership to report profits for its accounting period ended August 31, 1948, which it did not receive or realize during such period, but which were the income of Palmer & Company in its fiscal year ended August 31, 1949.

Whether under the law and regulations a taxpayer may or may not account for and report income from long-term contracts by the cash receipts and disbursements method or by an accrual method other than the methods authorized by the above regulation, is of no moment here, since the partnership here did neither. And to say that as a matter of law there is and can be no accrual of long-term contract income so long as there are contingencies which, when resolved, might or could in some degree affect the amount of ultimate profits, would be to hold that the percentage of completion method of accounting for and reporting such income is unsound and without basis in the law. Such method of accounting for and reporting long-term contract income is based on the proposition that as a general rule such contracts move to completion substantially as anticipated and planned by the parties and that the work done in progress toward completion of the entire work reasonably and fairly reflects the earning of a ratable portion of the anticipated ultimate profit, and the accrual on an annual basis of the profits so indicated has long been accepted and established as a sound and proper method for recording and reporting long-term contract income. That is not to say, however, that a ratable accrual of the contract profits would still be required, if there were unresolved contingencies of such character as to render the ultimate collection thereof improbable and unlikely. Not only is there no showing of the existence of such an improbability, but to the contrary, the evidence supports the conclusion that the profits as determined were collectible. For a case wherein varia-

tions of the meaning of the word accrued were discussed and one question was as to the accrual of profits on work or business only partially performed as of the end of the taxable period, see *Helvering* v. *Estate of Enright*, 312 U. S. 636, 642–645.

As supporting his determination, the respondent cites and relies on *Standard Paving Co.* v. *Commissioner*, 190 F. 2d 330, affirming 13 T. C. 425, and *Jud Plumbing & Heating, Inc.* v. *Commissioner, supra.* In *Jud Plumbing*, the taxpayer, a corporation, at a time when there had been substantial performance of certain contracts but not completion, dissolved and transferred its assets and business to its stockholders in liquidation. These stockholders took over the operation and completed the contracts and, as in the instant case, in returns filed for the year of completion, accounted for and reported the entire contract profits by the completed contracts method. In *Standard Paving*, under comparable conditions, the assets and business, including the incompleted contracts, were transferred by the petitioner corporation to its parent company in a nontaxable reorganization or exchange. The unfinished contracts were thereafter completed by the parent company, which, as in *Jud Plumbing* and in the instant case, accounted for and reported the contract profits in toto by the completed contracts method for the succeeding taxable year. In those cases, as in the instant case, the Commissioner, relying on section 41 as his authority, determined that on such state of the facts the completed contracts method of accounting did not clearly reflect the income from the contracts involved, and determined the income of the original contractor for the period prior to the disposition of the contracts, by relating its performance of the contract to the entire work under the contract. In both *Jud Plumbing* and *Standard Paving*, the petitioner corporation had been in existence and conducting a long-term contracts business over a period of years prior to the taxable year in question, and for such prior years and as to contracts completed had established a consistent practice of reporting the profits from such contracts by the completed contracts method approved by the above regulation. Even so, however, it was held that with respect to contracts in process of construction the original contracting corporation could not avoid the tax on the profits earned by its work in the performance of the contract by dissolving, as in the *Jud Plumbing* case, and transferring its assets, including the contracts, to its stockholders prior to completion; or, as in the *Standard Paving* case, by transferring its assets, including the contracts, to its parent company in a nontaxable exchange prior to completion, and that the Commissioner, under the statute, was justified in determining that as to the contracts in question the completed contracts method of accounting did not clearly reflect the income of the transferring cor-

porations and in allocating a ratable portion of the total contract profits to the original contracting corporations as the income earned prior to the said transfers.

It is thus apparent, we think, that in material respects the situation here is the same as in *Jud Plumbing* and *Standard Paving*, and that the rule pronounced in those cases is applicable and controlling here. We so hold. See also *Guy M. Shelley*, 2 T. C. 62.

In concluding and holding as above stated, we have not overlooked the contract provision which would have permitted Santa Anita to make the final payment under the contract in its preferred stock at the par value thereof. Although the contention is not otherwise developed, there is some suggestion, on brief, that by reason of that provision in the contract, a contrary decision to that pronounced is required. Suffice it to say that there is no showing of record that in the event of such election the stock, on any pertinent date, would have had a value less than par and that the portion or amount of the profits earned through the partnership's performance of the contract would have been in any amount other than that shown and determined herein.

*Decision will be entered for the respondent.*