Alden Charles **PALMER** and Tena Leonora Palmer, Petitioners,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent.

No. 15907.

United States Court of Appeals Ninth Circuit.
April 2, 1959.

John E. Marshall, Oklahoma City, Okl., for petitioner.

Charles K. Rice, Asst. Atty. Gen., Louise Foster, Lee A. Jackson, I. Henry Kutz, Thomas N. Chambers, Attorneys, Department of Justice, Washington, D. C., for respondent.

Before FEE, CHAMBERS and HAMLIN, Circuit Judges.

JAMES ALGER FEE, Circuit Judge.

There is only one question involved in this appeal from the Tax Court. It was there decided that the Commissioner of Internal Revenue had not abused the discretion granted to him by Section 41 of the Internal Revenue Code of 1939 [1] in determining that the method of accounting for and reporting contract income and expense used by a partnership did not clearly reflect its income. Therefore, the Commissioner ruled, under authorization of this section and Treasury Regulations, that the income from a construction contract should be reported for taxation under the percentage of completion method.[2] The Tax Court held the determination of the Commissioner was correct.

Alden Charles Palmer organized a corporation, Santa Anita Square, Inc., for the purpose of constructing certain housing projects in California. He controlled the corporation, was its president and, together with his family and relatives, owned all its stock. Thereafter, he or-

---

1. "The net income shall be computed upon the basis of the taxpayer's annual accounting period (fiscal year or calendar year, as the case may be) in accordance with the method of accounting regularly employed in keeping the books of such taxpayer; but if no such method of accounting has been so employed, or if the method employed does not clearly reflect the income, the computation shall be made in accordance with such method as in the opinion of the Commissioner does clearly reflect the income. If the taxpayer's annual accounting period is other than a fiscal year as defined in section 48 or if the taxpayer has no annual accounting period or does not keep books, the net income shall be computed on the basis of the calendar year." 26 U.S.C. § 41, 1952 Ed.

2. The completed contract and the percentage of completion methods of reporting income from long term contracts are authorized and described in Regulation 111, § 29.42–4, promulgated under the Internal Revenue Code of 1939.

ganized a partnership in which he was the only general partner, with an eighty-five per cent interest, and the other partners, who were his construction superintendent, a civil engineer, the architect and an attorney, were limited in liability. All limited partners except the attorney drew salaries.

Santa Anita made tentative arrangements, subsequently fulfilled, through a bank for guaranty of loans by the Federal Housing Administration on October 27, 1947. Two days thereafter on October 29, Santa Anita entered into a contract with the partnership for the construction of 160 houses for a remuneration separately stated in a fixed amount for each house. Monthly progress payments were to be made for one hundred per cent of labor and material costs, with final payment due 35 days after substantial completion of the work.

The construction loans were made available to Santa Anita by the bank under three group contracts, each subject to control agreements with Builders' Control Service, Inc., required by the bank to secure performance in accordance with the loan contracts.

Pursuant to a plan to offset the gains upon the contract of the partnership at Santa Anita for tax purposes against the losses upon a certain entity in which Palmer had an interest in Oklahoma, he acquired the interests of all the limited partners on August 31, 1948, and the partnership was thereby dissolved.

On the next day, September 1, 1948, Palmer transferred the partnership assets to a California corporation, which he had formed, in return for common stock therein. All the stock in the Oklahoma corporation, which had sustained losses, was also transferred to the new company.

The partnership prepared its only income tax return covering the period of its existence, September 5, 1947, through August 31, 1948. The balance sheet included therein showed an asset of $961,-900.48, described as construction in progress. But the return did not reflect any income or disbursements which can be referred to the contract under which the construction was done.

The California corporation filed an income tax return in which, on the "completed contracts" theory, it accounted for and reported in full the profits of this contract at Santa Anita and claimed deductions for losses sustained by the entity controlled by Palmer in Oklahoma.

This case appears quite simple of solution. The technical question is simply one of statutory construction. The provision of the tax law in dispute requires that net income be computed on the basis of the annual accounting period of the taxpayer in accordance with the method regularly employed by him in keeping books, except where "no such method of accounting has been so employed, or if the method employed does not clearly reflect the income." In that instance, it is expressly directed that the computation be made by "such method as in the opinion of the Commissioner does clearly reflect the income."

There is unquestionably a patent difference between a "method of keeping books" and the "method of accounting for and reporting income." Commissioner of Internal Revenue v. Schuyler, 2 Cir., 196 F.2d 85. This distinction is disregarded in the argument of respondent in reliance upon our opinion in Daley v. United States, 9 Cir., 243 F.2d 466. This resemblance between that decision and the present situation is in most respects fallacious. It is true it was there held that the method of accounting is a question of fact and that the label placed on a return is not conclusive. But the problem in the Daley case was whether the taxpayer could amend the return to show a different method of accounting and return. It was there also said upon the evidence, however, that a "completed contract" basis may be used with either the "accrual" or the "cash" method of determining profit upon the contract.

Here the only matter really raised by petitioner is the method of accounting income under the rule laid down in Section 42(a) of the Internal Revenue Code

of 1942,[3] which, of course, refers to the provisions of Section 41 above discussed.

But Palmer, who is not a lawyer, represented himself before the Tax Court. Since the partnership was not in existence in any previous tax year and since Palmer did not introduce the books or avail himself of an opportunity offered to stipulate as to the contents, there was no basis upon which the method of accounting actually used could be established. The Tax Court made no finding as to what the basis was. Palmer failed to establish "the method of accounting regularly employed in keeping the books of such taxpayer."

The argument of the government, which deals only with method of reporting, does not meet the requirements of the statute. The Tax Court, in adopting this argument in findings, was also inaccurate. The enactment provides that, if no such method of accounting has been so employed, or if the method employed does not clearly reflect the income, the computation shall be made in accordance with such method as in the opinion of the Commissioner does clearly reflect the income. The basis of the opinion of the Tax Court is that the method of reporting was improper. It should have held that petitioner had failed to prove that any "such method of accounting has been so employed" and therefore the method which would clearly reflect the income in the opinion of the Commissioner should be used to make the computation. The decision of the Tax Court can be affirmed upon this basis.

But there is a much more fundamental matter. Petitioner boldly and somewhat defiantly says not that their books had been kept according to one system or another, but that the partnership did not have this disputed income. There is thus a confusion between method of accounting for income and allocation of income. As was said in Jud

Plumbing & Heating, Inc. v. Commissioner, 5 Cir., 153 F.2d 681, 685:

> "The completed-contract method of accounting determines profits, but it does not always, necessarily and conclusively, determine legal rights to those profits, not the tax liabilities thereon. 'Ascertainment of income' is chiefly a matter of accounting. 'Allocation of income' is chiefly a matter of the application of income tax law to basic legal rights. The terms are not synonymous."

The dilemma of Palmer would not be solved whether or not he proved that his method of accounting was on "cash," "accrual" or "completed-contract" basis. The claim that the partnership had no income during its existence is contrary to all the facts in the case.

This partnership contracted with Santa Anita Square, Inc., to build 160 houses at a fixed price per house. This contract was never abrogated or cancelled. It was the same contract which was transferred to A. C. Palmer & Company by the partnership. This was the same contract which A. C. Palmer & Company completed and upon which it was paid a substantial profit.

There is no evidence that the construction contract was ever in abeyance or was a "dormant" or "sleeping contract," whatever is meant by that phrase. Santa Anita was required by its own contract with the bank "to construct or have constructed" the houses. Santa Anita likewise executed with Builders' Control Service contracts governing the disbursements of loan proceeds under which the sales proceeds were assigned until the loans from the bank were repaid. The partnership, because of its contract with Santa Anita, executed to Builders' Control Service a "waiver of any and all lien rights that we now have or may acquire against" Santa Anita. Each time also, the partnership released Builders'

---

3. "The amount of all items of gross income shall be included in the gross income for the taxable year in which received by the taxpayer, unless, under methods of ac-

counting permitted under section 41, any such amounts are to be properly accounted for as of a different period. * * * " 26 U.S.C. § 42(a), 1952 Ed.

Control Service "from any obligations to pay us at any time any sums for our services as Superintendent or otherwise."

If the partnership had had no contract, it would have had no lien rights and there would have been no problem of compensation. Petitioner talks about a novation. But there was no evidence of any such an operation. The bank and Builders' Control Service were fully aware of the contract with the partnership.

The building of the houses progressed during the entire period from the date when the partnership received an advance of $25,000, as a revolving fund, from Builders' Control Service under the contract between Santa Anita and the partnership of date October 29, 1947, through September 1, 1948, when the partnership was dissolved. During all this time, the contract with the partnership was in effect. It is claimed the partnership did not perform any services as contractor under the contract. This was the same contract which was transferred to petitioner and by him transferred to A. C. Palmer & Company, and petitioner received in exchange therefor all the common shares in that corporation.

During the time the houses were built under the contract, profits were earned by the partnership. The assignment was made for the purpose of allowing the corporation to make use of the profits earned on this very contract to balance or wipe out the losses of petitioner on the Oklahoma deal. Substantially, the consideration on the deal went to petitioner. The earnings up to the time of assignment were those of the partnership. Petitioner could not have siphoned off those earnings without paying therefor if the transaction had been between independent persons or entities. This feature makes it manifest that the partnership did earn the income under the contract up to September 1, 1948. The mere fact that the earnings were wrapped up in an entire contract and were not paid over until the contract had

been spirited out of the partnership and placed in the hands of a different corporation can not affect the situation.

The partnership was required to report and the partners were required to pay tax upon any income which had been earned during the period of its existence. The fact that a dissolution of the partnership was effected before the end of the taxing period could not prevent its earning and the incidence of income. The argument that the contract was assigned and work completed by a corporation which received compensation for the entire work and thereby the partnership had no income is, to say the least, ineffective.

While United States v. Lynch, 9 Cir., 192 F.2d 718, certiorari denied 343 U.S. 934, 72 S.Ct. 770, 96 L.Ed. 1342, related to a different although allied problem, the language and reasoning are so apposite to the situation at bar that it is adopted to illustrate our solution.

"The fundamental change in the corporation's circumstances, that is, its liquidation and consequent non-existence, prevented its accounting technique from achieving the rough matching of expenses and income previously attained.

"We understand appellant to contend that the income in question is not that of the corporation. The answer is, that the corporation has performed the services which create the right to the income which brings into play the basic rule that income shall be taxed to him who earns it. * * * A corporate liquidation and transfer of assets cannot divert taxability of income already earned any more than does an assignment of such income. * * * Appellant further argues that granting there was corporate income it should not be taxed to the corporation because of the peculiar circumstances of this case. However, 'a taxpayer * * * cannot avoid taxes by the simple expedient of not completing its contracts; and where a corporation puts itself in such a position that it

could never complete its contracts, it is in no position to insist that even if it had income it has no tax liability'. Cf. Jud Plumbing & Heating, Inc. v. C. I. R., 5 Cir., 1946, 153 F.2d 681, 685." United States v. Lynch, 9 Cir., 192 F.2d 718, 721.[4]

The method chosen by the Commissioner was fair and equitable. The decision of the Tax Court is affirmed.

Steel, District Judge, dissented.

---

**4.** This same conclusion under somewhat parallel states of fact has been reached by other Circuits and the Tax Court. Cf. Standard Paving Company v. Commissioner of Internal Revenue, 10 Cir., 190 F.2d 330, 332; Floyd v. Scofield, 5 Cir., 193 F.2d 594; Dillard-Waltermire, Inc. v. Campbell, 5 Cir., 255 F.2d 433; Carter v. Commissioner of Internal Revenue, 9 T.C. 364.