F. D. RICH CO., INCORPORATED, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
F. D. Rich Co. v. Commissioner
Docket No. 9007-74.
United States Tax Court
T.C. Memo 1977-125; 1977 Tax Ct. Memo LEXIS 313; 36 T.C.M. (CCH) 546; T.C.M. (RIA) 770125; May 2, 1977, Filed Lawrence Gochberg (an officer), for the petitioner. Robert S. Walker, for the respondent. FAY
MEMORANDUM FINDINGS OF FACT AND OPINION FAY, Judge: Respondent determined a deficiency of $115,437.78 in petitioner's Federal income tax for the fiscal year ended September 30, 1963. This deficiency occurred as a result of respondent's disallowance of a tentative loss carryback from the fiscal year ended September 30, 1966. We are to decide whether certain income received by petitioner from a long-term contract is reportable in the year ended September 30, 1966. FINDINGS OF FACT Incorporated in these findings are the stipulation of facts and appended exhibits. Petitioner is a Connecticut corporation having its principal place of business in Stamford, Connecticut, at the time the petition *314 herein was filed. It filed its Federal corporate income tax returns for the years ended September 30, 1963, and September 30, 1966, with the District Director of Internal Revenue at Hartford, Connecticut. Petitioner is engaged in the construction of buildings, primarily functioning as a general contractor for large projects. It reported income for the years involved according to the completed contract method of accounting. [1]
On February 5, 1965, petitioner entered into a longterm contract with the Department of the Navy, Southwest Division (Contract Number NBy-60188, Spec. No. 60188164). The total contract price amounted to $4,562,000. The contract provided for the construction of family housing units at a Naval Station located in Long Beach, California. The contract further provided that the work was to be performed over the succeeding 480 days, the last block of houses to be completed by June 7, 1966. Subsequently, the contract was amended by change orders which extended the completion date to August 9, 1966, and increased the total *315 contract price to $4,670,513. Between February 1965 and August 1966, work was performed by petitioner pursuant to the contract as amended. Partial payments were made to petitioner at regular intervals as the work progressed. In April 1966 the Navy Department began occupancy of the units but withheld acceptance pending completion of the remaining work. In August 1966, with most of the work completed, petitioner requested that payment be made of all but $68,430 of the remaining $150,000 owed under the contract. The Navy Department, on August 12, 1966, refused petitioner's request, citing a lack of satisfactory progress on certain work relating to asphalting and landscaping. In an attempt to correct matters, petitioner, on August 22, 1966, contacted its subcontractor bearing responsibility for the landscaping work and urged that the work be redone. On August 26, 1966, the Navy Department noted that, while some progress had been made, deficiencies in the work continued to exist in the area of the landscaping and in the sprinkler system. Accordingly, the Navy Department was not prepared to recommend full payment to petitioner of amounts withheld under the contract at that time. *316 During September and October 1966, petitioner twice asserted that the job had been completed and requested a final inspection of the site. On each of these occasions the Navy Department refused to accept the work as completed, making reference to the deficiencies in the landscaping work. On October 31, 1966, through November 4, 1966, substantial efforts were made by petitioner to remedy the flawed landscaping. The Navy Department, on November 9, 1966, accepted the project as substantially complete, but continued to withhold $71,403 under the contract until further landscaping work could be accomplished in the spring. On June 9, 1967, the Navy Department accepted the work as completed and authorized the final payment under the contract of $71,403. Subsequent to September 30, 1966, petitioner incurred costs and expenses of $34,744 under the contract. Petitioner reported the income from the long-term contract as income in its fiscal year ended September 30, 1967. Petitioner later filed a Corporation Application for Tentative Refund from Carryback of Net Operating Loss requesting a refund of $115,437.78 for the fiscal year ended September 30, 1963. This request was based *317 upon a claimed net operating loss carryback from the fiscal year ended September 30, 1966. Respondent tentatively allowed the carryback allowance refund of $115,437.78 for the fiscal year ended September 30, 1963. In his notice of deficiency, respondent determined that income from the contract was properly reportable in petitioner's fiscal year ended September 30, 1966. To the extent petitioner's income for fiscal 1966 was thereby increased, the net operating loss carryback to the fiscal year ended September 30, 1963, was subsequently disallowed. OPINION Pursuant to the completed contract method of accounting, petitioner reported as income for the fiscal year ended September 30, 1967, the profit from its long-term contract with the Navy Department. Respondent asserts that the contract in question was "finally completed" within the meaning of section 1.451-3(b)(2), Income Tax Regs., during the fiscal year ended September 30, 1966. Hence, he concludes that the profit earned from the contract is reportable in fiscal 1966 and, therefore, petitioner did not sustain a net operating loss in that year upon which to base a carryback to the fiscal year ended September 30, 1963. *318 Section 1.451-3(b)(2), Income Tax Regs., provides, in part, as follows: For purposes of this section * * * a longterm contract will not be considered "completed" until final completion and acceptance have occurred. * * * Within the literal meaning of these terms, it is clear that the work upon the contract in question was not finally completed and accepted during petitioner's fiscal year ended September 30, 1966. Prior to September 30, the Navy Department, citing certain incompletions in the landscaping, expressly indicated that it did not consider the job completed. Accordingly, the Navy Department continued to withhold $71,403 of the contract price until the further landscaping work could be performed to its satisfaction. Acceding to the Navy Department's request for additional work, petitioner thereafter expended substantial time and resources subsequent to September 30 in an effort to rectify these omissions. As a result of these efforts, the Navy Department finally acknowledged that the job was completed and authorized final payment some nine months later on June 9, 1967. We believe that the parties' actions with respect to the landscaping indicate that it was a *319 prominent feature of the contract, an element they clearly intended to have had completed before an acceptance of the project would be issued. In view of the importance attached to the completion of this work, we are unable to conclude that the landscaping constituted anything less than a significant element of the overall contract to be performed. We therefore hold that the contract was neither finally completed nor accepted by September 30, 1966. Nor are we able to conclude that the contract in question had proceeded to a point where it could be considered "substantially completed" in 1966, so as to require that the profit earned from the contract be included in that year's income in accordance with the rule set forth in Ehret-Day Co. v. Commissioner,2 T.C. 25 (1943). [2]
That case involved an agreement to *320 construct a commercial building for a total contract price of $127,578, later increased to $159,923.72. With respect to the manner of acceptance of the work, the contract provided as follows: Upon receipt of written notice that the work is ready for final inspection and acceptance, the Architect shall promptly make such inspection, and when he finds the work acceptable under the Contract and the Contract fully performed he shall promptly issue a final certificate, * * * stating that the work provided for in this Contract has been completed and is accepted by him * * * and that the entire balance found to be due the Contractor, and noted in said final certificate, is due and payable. * * * [2 T.C. at 26, 27; emphasis supplied.] On September 23 of the year in issue, the architect for the project issued a certificate authorizing payment of all but some $1,846 of the total contract price. Petitioner received such payment three days later. In December of the same year, petitioner received a further payment of $1,000, leaving some $846 withheld at the year's close because of defects and minor imperfections in workmanship. No formal written acceptance was ever *321 conveyed to the taxpayer by the owner, and the $846 balance went unpaid until the following year. Petitioner reported the profit earned on the contract in the later year. In upholding respondent's claim for inclusion in the earlier year, we held that since the contract was substantially completed, except for minor details, it was to be regarded as completed for purposes of taxation. We based our decision on the common law rule that allows one who has in good faith performed all the important particulars of a building contract to recover the contract price less the amount of any damages caused by his failure to perform strictly. Our holding was further buttressed by the finding that the contract was in fact accepted during the earlier year by virtue of the architect having issued a certificate authorizing payment in accordance with the terms of the contract. We believe the present case to be readily distinguishable from the Ehret-Day situation. In this case, petitioner, on the last day of the fiscal year in issue, had failed to perform significant requirements under the contract for which the Navy Department felt justified in withholding some $71,403 of the contract *322 price. Furthermore the amount of work that remained to be completed herein was distinguishable in dollar value, nature, and volume from the minimal amount of work uniformly involved in Ehret-Day and the cases subsequently following the substantial completion rule. See, e.g., Standard Paving Co. v. Commissioner,13 T.C. 425 (1949), affd. 190 F.2d 330 (1951), cert. denied 342 U.S. 860 (1951); Bien v. Commissioner,20 T.C. 49 (1953). [3] Moreover, the work in this case was not accepted in fact, as it was in Ehret-Day. We are convinced that the degree of work that remained to be completed in the present case goes well beyond those after-the-fact disputes involving differences of opinion over the quality of workmanship. [4] Hence we conclude that the contract was not substantially completed during fiscal 1966. Accordingly, we hold that petitioner's profit from the contract is not taxable in *323 that year. Decision will be entered under Rule 155. Footnotes
1. Petitioner had consistently employed the completed contract method of accounting for several years prior to those involved herein.↩
2. Indeed respondent has proceeded in a manner consistent with such a conclusion. Having raised the "substantial completion" argument at trial, he apparently chose to abandon this theory on brief, confining his argument to include only the assertion that petitioner had not carried his burden of proof with respect to final completion and acceptance.↩
3. See also Turner v. Commissioner,T.C. Memo. 1958-181; Wohlfeld v. Commissioner,T.C. Memo. 1958-128; Gerwick v. Commissioner,↩ a Memorandum Opinion of this Court dated March 31, 1954.
4. Subsequent to the trial of this case, but before the parties' briefs were filed, the Commissioner adopted new regulations in this area, sec. 1.451-3(d), Income Tax Regs. The parties do not argue the application of the new regulations. Even if they did, however, we do not believe them to be applicable here since those regulations and accompanying examples obviously refer to situations involving minor disputes over workmanship on work which was at least substantially completed, rather than situations in which significant portions of the job remain unperformed. See Income Tax Regs., sec. 1.451-3(d)(2) (vii) Example (2) [repainting of a steel girder]; Example (3) [faulty elevator]; Example (4) [elevator of insufficient capacity]; Example (5) [underground storage facility of insufficient capacity]; sec. 1.451-3(d)(3)(v) Example (2) [changes in heating system]; sec. 1.451-3(d)(4)(ii)↩ Example (1) [location and workmanship of heating ducts].