378 So.2d 1255 (1979)
Richard M. WELSH, Appellant,
v.
P.J. CARROLL, Individually, and Welsh & Carroll, P.A., Appellees.
No. 79-508.
District Court of Appeal of Florida, Third District.
December 18, 1979.
Rehearing Denied January 22, 1980.
High, Stack, Lazenby, Bender, Palahach & Lacasa and Alan R. Dakan, Miami, *1256 Young, Stern & Tannenbaum and Burton Young, North Miami Beach, for appellant.
Daniels & Hicks and Sam Daniels, Pyszka, Kessler & Adams, Miami, Lee, Murphy & Coe, Jupiter, for appellees.
Before PEARSON, HUBBART and NESBITT, JJ.
PER CURIAM.
The parties to this appeal, appellant Richard M. Welsh and appellee P.J. Carroll, practiced law under the professional association of Welsh & Carroll, P.A. Each party owns 50% of the stock in the association, and each had an employment contract with the firm under which appellee Carroll received 60% and appellant Welsh 40% of the firm's net income. On May 1, 1975, the parties mutually agreed that they would not take any new business under the professional association. For the next five months, they continued to practice in the same location, winding up the business of the professional association and handling new cases on their own. During this period, they continued to receive compensation for the professional association's business according to the existing 60%-40% formula.
On or about October 1, 1975, the parties physically separated their practice. Appellee Carroll took with him the files he was working on, files generating 80% of the professional association's income, and appellant Welsh retained the remaining files, generating 20% of the association's income. Thereafter, this suit was filed by Welsh, who sought an accounting, injunctive relief and damages. Carroll answered and counterclaimed, also for an accounting. The cause proceeded to a non-jury trial, and a judgment was entered in part, as follows:
"5. The firm's employment contracts have not been terminated, but certain conditions thereof have been waived or modified because of the changed circumstances of the winding up process.
"6. There was an implied as well as an express agreement that the parties would be compensated in accordance with the 60/40 division of net income.
"7. The 60/40 division of net income constitutes reasonable and fair compensation to the parties for services rendered to the firm during all times here material, past and future.
"8. The equities are with the defendants-counterplaintiffs, and the contentions advanced by the plaintiff-counterdefendant would produce a grossly inequitable result. Neither law, logic nor fundamental fairness justifies the plaintiff's contentions that a lawyer receiving 40 percent of a firm's net income should receive 50 percent of its gross fees merely because the lawyers decide to wind up the firm. The position advanced by the plaintiff-counterdefendant would be tantamount to giving the lawyer doing approximately 80 percent of the work only 20 percent of the net fees, with the lawyer doing approximately 20 percent of the work receiving approximately 80 percent of the net fees.
"CONCLUSIONS OF LAW
"9. During the winding up process, the parties shall divide the firm's net income on the same basis as they have in the past  60 percent to Mr. Carroll and 40 percent to Mr. Welsh. All of the firm's cases should be concluded on this basis as the legal principles involved apply equally to both contingent and hourly fees.
"10. The parties, in computing net income shall each apply a 50 percent overhead factor. The party closing out a case shall deduct 50 percent of the gross fee for overhead in producing such fee.
"11. The parties are ordered to render unto each other an accounting in accordance with the provisions of this order as to all cases pending in the firm on May 1, 1975."
Appellant Welsh presents three points on appeal. The first questions the sufficiency of the evidence to support the findings of fact set forth above. The second claims error in the court's decision that the fee in pending cases should be divided according to the employment contract *1257 rather than on the basis of the ownership of the professional association. The third claims that error occurred when the trial judge admitted into evidence the entire depositions of the parties. The parties are in agreement that the merits of this appeal must be determined under the general law and the holdings of this court in Kreutzer v. Wallace, 342 So.2d 981 (Fla.3d DCA 1977); and Frates v. Nichols, 167 So.2d 77 (Fla.3d DCA 1964).
The appellant's argument under the first point is directed to several particulars. First, it is urged that the employment contracts were terminated by the parties at the time that they agreed to take in no new business and began the practice of law under separate entities. It is urged that this action amounted as a matter of law to an abandonment of their employment. We hold that the finding of the trial court is well supported by substantial evidence in the record showing that the employment contract itself provided for a method of termination, which was never acted upon by either party. In addition, the actions of the parties for the next five months were consistent only with their interpretation of the employment contracts as being in force during this period of time. It is a recognized principle of law that the parties' interpretation of their own contract will be followed unless it is contrary to law. See American Agronomics Corporation v. Ross, 309 So.2d 582 (Fla.3d DCA 1975); and Pembroke Park Lanes, Inc. v. High Ridge Water Company, 178 So.2d 37 (Fla.3d DCA 1965). It is apparent that common sense supports the trial judge's finding that the employment contracts were not abandoned.
Having reached the conclusion that there is support for the trial judge's findings that the employment contracts were not abandoned and that they were in force during the winding-up period, it is not essential that we determine that the court correctly found that there was an implied agreement to continue the 60% 40% arrangement. Nevertheless, we have checked the record with this point in mind and concur with the trial court that, if the express contracts were not effective, then the actions of the parties support a finding of an implied contract for compensation upon the 60%-40% formula.
Under the appellant's second point, it is urged that the trial court did violence to the doctrine of stare decisis when it found that the proceeds from the wind-up business need not be divided on the same basis as the division of the stock ownership in the corporation. It is urged that both the Frates and Kreutzer cases, supra, stand for the contrary proposition.
The principal holding in each of these cases is that the retention of a law firm obligates every member thereof to fulfill that contract, and that upon a dissolution, any partner is obligated to complete that obligation without extra compensation. The appellant argues that because no one is entitled to extra compensation for the winding up of the association's business, then all fees must, after an agreement of dissolution, be divided to the members in accordance with their shareholders' percentage because the fees are simply assets of the association.
It was expressly pointed out in the Kreutzer opinion that there was no agreement between the partners concerning extra compensation for members of the firm for winding up cases subsequent to dissolution. In the present case, the trial court found, and we have approved as supported by the record, that the employment contracts between the members and the association were still in force. As such, the employment contracts do not amount to a provision for extra compensation for winding up the association's business. In essence, the contracts are simply a provision for compensation for work done according to that compensation in effect before dissolution. As found by the trial judge, the arrangement appears to be fair and equitable, without provision for extra compensation.
The third point concerns the fact that the trial court did not rule on the appellant's objection to the relevancy of certain portions of the depositions of the *1258 parties which were admitted into evidence. The trial court's failure to make specific rulings on objections was procedural error, but we may not thereby simply assume that there prejudicial error. The court was certainly competent to consider only material evidence. The appellant has not in his brief or in oral argument referred to any portion of the depositions. The appellee has also ignored their existence. Because no prejudice is shown or suggested, we find no reversible error.
Having fully examined the points presented and the record submitted and finding no reversible error, we affirm the judgment in all particulars.
Affirmed.