379 So.2d 666 (1980)
Jose P. BARED et al., Appellants,
v.
Jose COBO, Appellee.
No. 79-538.
District Court of Appeal of Florida, Third District.
January 22, 1980.
Rehearing Denied February 26, 1980.
Murai, Wald & Biondo, Susan Goldman, Miami, for appellants.
Therrel, Baisden, Stanton, Stillman, Brown & Wood and Howard A. Setlin, Miami Beach, Alfred Manheim, Miami, for appellee.
Before HENDRY and SCHWARTZ, JJ., and VANN, HAROLD (Ret.), Associate Judge.
SCHWARTZ, Judge.
Jose Bared appeals from a "final order for release of tax refunds," rendered after a non-jury trial, which provided for the distribution of $233,690.87 in Internal Revenue Service drafts. The checks represented tax refunds to a corporation, Bared & Cobo Company, Inc., a mechanical engineering firm, of which Bared and the appellee Jose *667 Cobo had each owned 50% of the stock. The trial court ordered that approximately 82% of the refund, about $191,000, be paid to a successor corporation owned by Cobo, and 18%, $42,000, to one controlled by Bared. On this appeal, Bared contends that, under a proper interpretation of the parties' agreements concerning the dissolution of the company and the winding up of its affairs, he is entitled to 54.55%, and Cobo only 45.45%, of the amount in question. We agree with the appellant's position and therefore reverse the judgment under review.
The refunds in question were remitted because of losses sustained by Bared & Cobo Company on projects in which it was engaged on May 31, 1977. It was as of that date that the corporation, by mutual agreement, was divided into two separate and equal Divisions. On June 9, 1977, Bared and Cobo signed a written agreement to that effect which stated that
"the jobs and assets of the Company shall be divided equally between the Bared Division and the Cobo Division according to a current allocation to be made by the [accounting] firm of Peat, Marwick, Mitchell and Company."
Peat, Marwick undertook the task provided in this agreement, which involved primarily the problem of allocating several large and long-term construction contracts which were in various stages of completion on May 31, 1977. It is undisputed  because the Peat, Marwick partners who actually did the work each so testified at the trial  that, specifically in order to achieve equality between the Divisions in the post-May 31 period, the contracts were divided into two groups of equal value on a "percentage-of-completion," rather than a gross value basis; that is, a $200,000 contract which was half-completed on May 31 was assigned the same value, $100,000, as a $1,000,000 project which was 90% finished on that date. The agreements were placed into two groups each with the same gross post-May 31 value, as so calculated. Bared and Cobo then literally flipped a coin to determine which had the choice of the two "piles" of contracts.
In a November 12, 1977 agreement, the parties supplemented the June 9 contract by providing for the dissolution of Bared & Cobo Company, Inc. through a spin-off of two newly-created subsidiaries into which the parent's assets and liabilities were to be transferred. The November 12 agreement carefully provided that all pre-May 31, 1977 gains and losses were to be divided equally, while those which were subsequently incurred would accrue to the advantage or disadvantage of the particular Division in question. In paragraph 1(C), which controls the issue in the case at bar, the parties made it clear that the same principle was to be applied to the tax consequences of the split. That provision states:
Each division is to pay the taxes due by the Corporation as a result of the profits of those divisions from May 31, 1977, and each division shall be entitled to a portion of prior taxes paid by the Corporation as a result of the losses of that division since May 31, 1977. Refunds obtained by the Corporation because of losses prior to such date shall be paid by the Corporation in equal amounts to the subsidiaries being spun off in accordance with the provisions hereunder ... [e.s.]
The contracts in progress thereafter were divided in the manner which has been described, and each Division continued the work required to complete the group of projects to which it had been assigned. The present controversy arose largely because of two characteristics of the Bared & Cobo Co., Inc. tax accounting procedures: (a) while the division of the company was effective May 31, 1977, the corporation was on a November 1, 1976-October 31, 1977 fiscal year, and (b) the corporation computed its income based upon the "completed contract" method of reporting. As it also happened, the "pile" of agreements which became the responsibility of the Cobo Division included several which had large face amounts, but which had been substantially completed by May 31 and therefore had been given a relatively low valuation in the splitting of the contracts effected by Peat, Marwick. Although substantial losses had *668 been sustained on these contracts, which were completed by the Cobo Division prior to October 31, the end of the fiscal year, the bulk of those losses were attributable to the period before May 31, when most of the work upon them had been performed by the original parent corporation. The refunds from the IRS in question in this case were almost all the result of these losses, as reported under the "completed contract" method in the 1977 Bared & Cobo Co., Inc. corporate income tax returns.
In the court below, the appellant Bared contended that these funds should be divided as the contracts had been, with the losses, and consequent refunds attributable to pre-May 31 operations on all the contracts split 50-50, and with post-May 31 losses and refunds distributed to the Division which had been responsible for them. If calculated in this way, 54.55% of the refund would go to Bared and 45.45%, to Cobo. Cobo, on the other hand, claimed that each party's Division was entitled to receive the benefits of all the losses (or profits), no matter when incurred, on any contract assigned to that Division, regardless of what proportion of the contract in question had been completed by May 31. Since this theory resulted in the 82%-Cobo, 18%-Bared split of the IRS checks reflected in the final order, it is clear that the trial judge accepted the latter contention. This was error.
Simply stated, we find nothing in the record to support the lower court's interpretation of the agreement of the parties as to the distribution of the tax refund in question. It is apodictic that the main, indeed the only, issue really involved in the construction of contracts is the determination of the intention of the parties, as primarily reflected in the specific language which they themselves adopted. Holmes v. Kilgore, 89 Fla. 194, 103 So. 825 (1925); L'Engle v. Overstreet, 61 Fla. 653, 55 So. 381 (1911); J & S Coin Operated Machines, Inc. v. Gottlieb, 362 So.2d 38 (Fla. 3d DCA 1978); 11 Fla.Jur.2d Contracts, Sections 107-108 (1979). Paragraph 1(C) of the November 12, 1979 agreement expresses, with what we think is complete clarity, the intention of the parties that any income tax benefits (or obligations) were to be distributed just as the contracts in progress had been  with the consequences of the pre-May 31 operations divided equally, and with only the post-May 31 profits and losses of a particular contract attributed to the Division which was charged with its completion. See Welsh v. Carroll, 378 So.2d 1255 (Fla. 3d DCA 1979).
Any uncertainty as to this conclusion is dissipated by the undisputed showings that (a) the entire purpose of the parties was to effect an equal division of Bared & Cobo Company and that (b) equality would not exist if each Division were completely responsible for all the tax consequences of a contract assigned to that Division which was incomplete on May 31, 1977. See Welsh v. Carroll, supra. As one of the Peat, Marwick partners who was directly involved unequivocally testified:
Q. Mr. Fernandez, was it ever the contemplation of Peat, Marwick in making this equal division, that each Division of the Company would be responsible for the entire income tax consequences of those continuing contracts which were partially performed prior to May 31, 1977?
A. Certainly not.
* * * * * *
Q. Mr. Fernandez, if each Division of the Bared & Cobo Company were responsible for the entire tax consequences of all contracts including the portion of the contract performed prior to May 31, 1977, would the division of the company which you effectuated in fact have been equal?
A. No ... [T]he divisions do not take a whole contract, they only basically take the unperformed portion of the contract from May 31st on, therefore, the profits earned, or losses incurred in a particular contract prior to May 31st are the responsibility of the company, and that is supposed to be divided 50-50.
Q. Now, I ask you once again, was it ever contemplated by Peat, Marwick that each division of the company would be responsible for the entire income tax consequences *669 of continuing contracts that were partially performed prior to May 31, 1977?
A. No, never.
Q. And could there be an equal division if that were the case?
A. Couldn't be an equal division because if you give one division contracts on half more accumulated profits through May 31, they certainly would have a larger tax liability when that contract is complete .. .
Moreover, under the trial court's interpretation, as reflected by the 82%-18% division provided by the final order, Cobo reaps the benefit of large refunds through losses incurred before May 31 on contracts his Division completed thereafter, while Bared would incur the entire tax liability of any profitable contracts assumed by his Division. Since the entire purpose of the parties' understanding was to achieve equality in line with their 50-50 interest in the corporation, the order below therefore plainly runs afoul of the basic rule that contracts should, if possible, be construed to avoid an unconscionable or oppressive result. See James v. Gulf Life Ins. Co., 66 So.2d 62 (Fla. 1953); Bouden v. Walker, 266 So.2d 353 (Fla. 2d DCA 1972); Ennis v. Warm Mineral Springs, Inc., 203 So.2d 514 (Fla. 2d DCA 1967), cert. denied, 210 So.2d 870 (Fla. 1968).
In fact, the only thing which may be adduced in support of the judgment under review is that it reflected the "completed contract" method of tax accounting employed by the corporation. It is well-settled, however, that this method of accounting is simply that: an artificial, fictional means of reporting income to the IRS. Its use does not affect otherwise-existing legal rights to the distribution of profits or losses. See Dillard-Waltermire, Inc. v. Campbell, 255 F.2d 433 (5th Cir.1958); Palmer v. Commissioner, 29 T.C. 154 (1957), affirmed, 267 F.2d 434 (9th Cir.1959), cert. denied, 361 U.S. 821, 80 S.Ct. 66, 4 L.Ed.2d 66 (1959).
For these reasons, the final order under review is reversed and the cause remanded with directions to enter a judgment distributing 54.55% of the funds in dispute to the interest of Bared, and 45.45%, to that of Cobo.
Reversed and remanded.