TRINCO INDUSTRIES, INC., FORMERLY MINUTE MOP CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 38788. Filed July 19, 1954.

*Harry L. Appelman, C. P. A.*, for the petitioner.
*Richard D. Hobbet, Esq.*, for the respondent.

RAUM, *Judge:* 1. The petitioner's principal contention is that it is entitled to carry back to its taxable year ending June 30, 1948, and apply against its income for that year not only the loss which it sustained for the taxable year ending June 30, 1950, but also the loss sustained for the taxable year ending June 30, 1950, by its subsidiary, the Minute Mop Factory (Canada), Limited. We think that the deduction thus claimed on account of the loss sustained by the subsidiary is not allowable under the statute and applicable regulations. The problem is one that does not come to us without guidance from prior decisions.

Section 23 (s) of the Internal Revenue Code provides for the deduction of the net operating loss computed under section 122, which defines a net operating loss as well as the carry-back and the carry-over to which the "taxpayer" is entitled with respect to such loss. Under our tax laws each corporation is a separate taxpayer notwithstanding the relationship of parent and subsidiary. *National Carbide Corp.* v. *Commissioner*, 336 U. S. 422; *Interstate Transit Lines* v. *Commissioner*, 319 U. S. 590. Having selected the multiple corporate form as a mode of conducting business the parties cannot escape the tax consequences of that choice, whether the problem is one of the taxability of income received, as in the *National Carbide* case, or of the availability of deductions, as in the *Interstate Transit* case. And the separate identity of affiliated taxpayers is preserved notwithstanding the filing of consolidated returns. This was made clear more than 20 years ago in *Woolford Realty Co.* v. *Rose*, 286 U. S. 319, where it was held that a net loss sustained by a corporation in 1925 could not be deducted in a consolidated return for 1927 so as to offset income of the parent corporation. The Court noted that under the applicable statute the term "taxpayer" was defined to include "any person * * * subject to a tax imposed by this Act," and pointed out that "A corporation does not cease to be such a person by affiliating with another." 286 U. S. at p. 328. The statutory provisions presently involved do not differ in any significant degree from those in the *Woolford Realty Co.* case to the extent that they affect the problem before us.

The decision in the *Woolford Realty* case was applied the same day in *Planters Oil Co.* v. *Hopkins*, 286 U. S. 332, which may perhaps be even closer to the controversy before us. There the owner of substantially all the stock of 2 joint stock associations caused their principal assets to be transferred to 3 newly organized corporations that were substantially wholly owned by him. It was held that in a consolidated return of all 5 companies the net loss of the joint stock

associations for an earlier year could not be used as a deduction against income earned by the corporations. The Court stressed the fact that the corporations were not identical with the unincorporated associations to whose principal assets they had succeeded, and that the losses of the associations suffered in the earlier year were not the losses of the corporations that came into existence afterwards. The mere fact that the business conducted by the Canadian subsidiary herein had formerly been carried on by petitioner is no different in substance from the fact that the business conducted by the 3 corporations in the *Planters Oil Co.* case had formerly been carried on by the joint stock associations.

The results reached in the foregoing cases were in accord with the preponderance of authority in the lower Federal courts at that time, see *Woolford Realty Co.* v. *Rose*, 286 U. S. at pp. 331–332,[1] and the same principles have been followed since then in a variety of circumstances. *Marion-Reserve Power Co.*, 1 T. C. 513; *Commissioner* v. *Trustees of L. Inv. Ass'n*, 100 F. 2d 18, 28–30 (C. A. 7), certiorari denied, 307 U. S. 647; *Standard Paving Co.* v. *Commissioner*, 190 F. 2d 330 (C. A. 10),[2] affirming 13 T. C. 425, certiorari denied, 342 U. S. 860; *Capital Service, Inc.* v. *Commissioner*, 180 F. 2d 579 (C. A. 9), affirming a Memorandum Opinion of this Court. Cf. also *New Colonial Ice Co.* v. *Helvering*, 292 U. S. 435, 440. These principles are applicable here.

The conclusion that we reach is confirmed, if not compelled, by regulations, which have a special importance in this type of case. The privilege of filing a consolidated return is accorded by section 141 (a) of the Internal Revenue Code which, however, requires all members of the affiliated group to consent to the regulations prescribed under subsection (b) prior to the last day prescribed by law for the filing of such return; and section 141 (a) further provides that the making of the consolidated return "shall be considered as such consent." Cf. *Singer Sewing Machine Co.*, 5 T. C. 851, 855, affirmed, 158 F. 2d 982 (C. A. 3), certiorari denied, 331 U. S. 837; *Capital Service, Inc.* v. *Commissioner, supra.* The authority for the applicable regulations is conferred upon the Commissioner by section 141 (b),[3] and the regula-

---

[1] See also *J. Sklar Manufacturing Co.*, 22 B. T. A. 1326, 1328.

[2] The Court of Appeals stated (190 F. 2d at p. 334) : "It is a basic concept of taxation that the only person who can take a net operating loss deduction is the taxpayer who sustained the loss * * *."

[3] SEC. 141. CONSOLIDATED RETURNS.

(b) REGULATIONS.—The Commissioner, with the approval of the Secretary, shall prescribe such regulations as he may deem necessary in order that the tax liability of any affiliated group of corporations making consolidated income- and excess-profits-tax returns and of each corporation in the group, both during and after the period of affiliation, may be returned, determined, computed, assessed, collected, and adjusted, in such manner as clearly to reflect the income- and excess-profits-tax liability and the various factors necessary for the determination of such liability, and in order to prevent avoidance of such tax liability.

tions which he promulgated thereunder are Regulations 129. Pertinent provisions of Regulations 129 [4] are set forth in the margin.[5] We think it is plain from a fair reading of these regulations that the only loss that petitioner can use either as a carry-over or a carry-back to a year when it filed a separate return is merely that portion of the consolidated net loss attributable to its own affairs.

*Stanton Brewery v. Commissioner*, 176 F. 2d 573 (C. A. 2), reversing 11 T. C. 310, relied upon by petitioner, did not involve the foregoing regulations. In the *Stanton* case the Court of Appeals, over a strong dissent by Judge Learned Hand, treated a corporation resulting from a merger as the same taxpayer as the component corporations which went into the merger and held that the former could carry over, for excess profits tax purposes, the unused excess profits credit of one of its components for the 2 years prior to the merger. Thus, there were not present in that case either the statutory provisions or the accompanying regulations dealing with the filing of consolidated returns which are applicable here. Moreover, it should be noted that in *California Casket Co.*, 19 T. C. 32, 39, we declined to follow the decision of the Court of Appeals in the *Stanton* case [6] and indicated our intention to adhere to our original decision in that case (11 T. C. 310). An unreported District Court

---

[4] These provisions of Regulations 129 are comparable to provisions previously included in section 23.31 (d) (7) and section 23.31 (f) of Regulations 104, as amended by T. D.' 5244, 1943 C. B. 439, 460–461, 462.

[5] SEC. 24.31. Bases of tax computation.

(b) *Computations.* In the case of affiliated corporations which make, or are required to make, a consolidated return, and except as otherwise provided in these regulations—

\* \* \* \* \* \* \*

(7) *Apportionment of consolidated net operating loss.* If an affiliated group filing a consolidated return sustains a consolidated net operating ˙loss within the provisions of section 26 (c), relating to the net operating loss credit, or within the provisions of section 122, relating to the net operating loss deduction, and if there are included as members of such group one or more corporations which made separate returns, or joined in a consolidated return filed by another affiliated group, either in the preceding taxable year or in a succeeding taxable year, the portion of such consolidated net operating loss attributable to such corporations severally shall be determined, such portion in case of any such corporation being determined in an amount proportionate to the net losses (capital net losses and ordinary net losses alike) of the several affiliated corporations having net losses, to the extent that such losses were taken into account in the computation of the consolidated net operating loss.

SEC. 24.31. Bases of tax computation.

(d) *Net operating loss deduction, net operating loss credit, and dividend carry-over before or after consolidated return period.* The consolidated net operating loss .\* \* \* of an affiliated group \* \* \* shall be used in computing the consolidated net operating loss deduction \* \* \* notwithstanding that one or more corporations, members of the .group in the taxable year in which such loss \* \* \* originates, makes separate re- turns \* \* \* for a subsequent taxable year (or, in the case of a carry-back compu- tation, for the preceding taxable year), but only to the extent that such consolidated net operating loss \* \* \* is not attributable to such corporations; and *such portion oj such consolidated net operating loss \* \* \* as is attributable to the several corpora- tions making separate returns \* \* \* for a subsequent taxable year (or, in the case of a carry-back computation, for the preceding taxable year) shall be used by such corpo- rations severally as carry-overs, or as carry-backs, in such separate returns* \* \* \* [Emphasis supplied.]

[6] Compare *Estate of William E. Edmonds*, 16 T. C. 110, 117; *Albert L. Rowan*, 22 T. C. 865, 873; *American Coast Line* v. *Commissioner*, 159 F. 2d 665, 668–669 (C. A. 2).

case also relied upon by petitioner similarly appeared to raise the question as to the status of a corporation resulting from a statutory merger, and, in any event, is so out of line with the trend of the decided cases that we cannot accept it as an authoritative ruling on the matter before us.

2. Petitioner contends in the alternative that the Commissioner erred in failing to allow a loss of $13,259.93 on its loans to Minute Mop Factory (Canada), Limited, during the fiscal year ending June 30, 1950. The purpose of this alternative contention is apparently to obtain an increase in the amount of the consolidated net operating loss attributable to it for the taxable year ending June 30, 1950, and thus increase its own net operating loss carry-back for such year.

There are several reasons why this contention is without merit. Petitioner has failed to prove the worthlessness, in whole or in part, of the debt owed to it by its Canadian subsidiary in the taxable year ending June 30, 1950. On that date the subsidiary had been operating for less than a year and owed petitioner $55,348.70. While losing money, and insolvent to the extent that its liabilities exceeded the book value of its assets, it was still actively engaged in business on June 30, 1950, and continued to operate for more than a year thereafter. Evidence of insolvency based on book figures does not necessarily establish the worthlessness of debts. Certainly, the entire debt was not worthless on June 30, 1950, for the subsidiary had sufficient assets on that date to repay the greater part of the loan, and all but $13,879.85 was subsequently repaid. And, as to partial worthlessness, there is no satisfactory evidence that on that date petitioner could predict with reasonable certainty what part, if any, of the debt would not be repaid. Moreover, in claiming partial worthlessness, petitioner's position is fatally defective because there is no evidence that the part claimed was charged off in the year ending June 30, 1950. Such charge-off is required by section 23 (k) (1) of the Internal Revenue Code. *International Proprietaries, Inc.*, 18 T. C. 133.

Even if it be assumed that petitioner had proved that part of the indebtedness owed it by its Canadian subsidiary became worthless and was charged off during the year ending June 30, 1950, it nevertheless would not be entitled to increase the amount of the consolidated net operating loss attributable to it in that taxable year by the amount of this debt. The regulations to which petitioner must be deemed to have consented when the consolidated return was filed specifically provide that no deduction shall be allowed during a consolidated return period to any member of the affiliated group on account of worthlessness in whole or in part of any obligation of any other corporation which was a member of the group, except as a loss resulting from a bona fide termination of the business and operations

of such other corporation. Sec. 24.40, Regs. 129. The Canadian subsidiary did not terminate its business or operations in the year ending June 30, 1950. The regulations also provide that in determining the amount of the consolidated net operating loss which is attributable to each member of the affiliated group for the purposes of a carryback from a consolidated return period to a separate return period only the losses of petitioner which were taken into account in the computation of the consolidated net operating loss may be considered. Regs. 129, sec. 24.31 (b) (7) and sec. 24.31 (d). A loss resulting from a loan by one member of the affiliated group to another would not be taken into account in such a computation.

On brief petitioner claims that it is entitled to a deduction of $3,000 as a "worthless stock deduction." No allegation is made in its petition that the respondent erred in failing to allow such deduction, and we therefore do not pass upon it, although some of the considerations noted above in connection with the claim to a bad debt deduction would equally preclude the worthless stock deduction.

*Decision will be entered for the respondent.*