**OLIVIER COMPANY, a Corporation,**
**Plaintiff,**

v.

**George D. PATTERSON, Director of Internal Revenue of the District of Alabama, Defendant.**

**United States of America, Intervenor.**

**Civ. A. No. 8037.**

United States District Court
N. D. Alabama, S. D.
May 20, 1957.

D. H. Markstein, Jr., Birmingham, Ala., Louis F. Oberdorfer, W. R. Perlik, Cox, Langford, Stoddard & Cutler, Washington, D. C., and, Oberdorfer & Oberdorfer, Birmingham, Ala., for plaintiff.

William L. Longshore, U. S. Atty., and Atley A. Kitchings, Jr., Asst. U. S. Atty., Birmingham, Ala., and Andrew F. Oehmann and Charles Mehaffey, Attys., Dept. of Justice, Washington, D. C., for defendants.

LYNNE, Chief Judge.

This is an action for the recovery of income and excess profit taxes for the fiscal years ending March 31, 1954 and 1955, brought by Olivier Company, Inc., a New York corporation (hereinafter referred to as Olivier). This cause has been submitted upon a stipulation of facts agreed to by the parties. On March 2, 1953, Olivier became affiliated with C. I. Whitten Transfer Company, a West Virginia corporation (hereinafter referred to as Whitten) through the acquisition by Olivier of all the outstanding capital stock of Whitten. Olivier filed its federal income tax returns on the basis of fiscal years ending March 31. Whitten previously filed its federal income tax returns on a calendar year basis.

Consolidated federal tax returns were filed by Olivier and Whitten for the fiscal years ended March 31, 1953, 1954 and 1955, the last two being filed in the State of Alabama and the first being filed in the State of New York.

Whitten filed Form 1122 "Return of Information and Authorization and Consent of Subsidiary Corporation" included in a United States consolidated income tax return for the period it was affiliated with Olivier during the taxable year ended March 31, 1953. This consolidated return included the income and expenses of Olivier for the twelve-month period ended March 31, 1953, and the income and expenses of Whitten for the twenty-nine day period, March 2, 1953, through March 31, 1953. In this consolidated return Olivier claimed a net operating loss deduction of $465,067.50 sustained after April 1, 1952, but before March 2, 1953.

For fiscal year ending March 31, 1954, Olivier filed a federal tax return showing tax liability of $179,970.23 on taxable income of $295,584.94 and herein claims the full amount of this tax as a refund.

For fiscal year ending March 31, 1955, Olivier filed a return showing tax liability of $130,914.84 on taxable income of $252,620.27 and herein claims a refund for this year in the amount of $97,425.52.

Defendant has proposed a deficiency of $29,980.27 for the fiscal year ended March 31, 1953, and $4,459.32 for fiscal year ended March 31, 1954.

The single issue in this case is whether Olivier has a right to carry forward to its fiscal years ending March 31, 1953, 1954, and 1955 its net operating loss sustained prior to March 2, 1953, but after April 1, 1952, and offset said loss against the income of Whitten earned after March 2, 1953, the date of affiliation.

This issue is controlled by the applicable provisions of Section 141 of the Internal Revenue Code of 1939, 26 U.S. C.A. § 141, which provides as follows:

"§ 141. Consolidated returns.

"(a) *Privilege to file consolidated returns.* An affiliated group of corporation shall, subject to the provisions of this section, have the privilege of making a consolidated return for the taxable year in lieu of separate returns. The making of a consolidated return shall be upon the condition that all corporations which at any time during the taxable year have been members of the affiliated group consent to all the consolidated return regulations prescribed under subsection (b) prior to the last day prescribed by law for the filing of such return. The making of a consolidated return shall be considered as such consent. In the case of a corporation which is a member of the affiliated group for a fractional part of the year, the consolidated return shall include the income of such corporation for such part of the year as it is a member of the affiliated group.

"(b) *Regulations.* The Secretary shall prescribe such regulations as he may deem necessary in order that the tax liability of any affiliated group of corporations making a consolidated return and of each corporation in the group, both during and after the period of affiliation, may be returned, determined, computed, assessed, collected, and adjusted, in such manner as clearly to reflect the income-and excess-profits-tax liability and the various factors necessary for the determination of such lia-

bility, and in order to prevent avoidance of such tax liability."

Treasury Regulations 129, promulgated under this code section, provide as follows:

"Sec. 24–31. *Bases of tax computation.*

"(b) *Computations.* In the case of affiliated corporations which make, or are required to make, a consolidated return, and except as otherwise provided in these regulations—

"(1) *Net income.* The net income of each corporation shall be computed in accordance with the provisions covering the determination of net income of separate corporations, except—

\*　　\*　　\*　　\*　　\*　　\*

"(vi) In the computation of the net income of a corporation for the taxable year in which it became the common parent corporation of the affiliated group filing a consolidated return, the aggregate deductions of such corporation for such year otherwise allowable in excess of the gross income of such corporation for such year shall be excluded to the extent that such excess is attributable to that portion of such year preceding the date upon which such corporation became the common parent corporation of the group. Any amount excluded under this subdivision shall, to the extent that it constitutes a net operating loss within the provisions of section 122 or a net capital loss within the provisions of section 122 or a net capital loss within the provisions of section 117, be considered as a net operating loss or a net capital loss, as the case may be, separately sustained by such corporation and subject to the provisions of (a) (3) (ii) or (a) (9) (ii) of this section; \* \* \*."

Olivier in substance complains that said regulations are invalid for that they do not allow the pre-affiliation loss of Olivier to be offset and carried forward

against the post-affiliation income of Whitten.

In asserting this contention Olivier charges that the long established integrity of the annual accounting period as a basis for the result of tax liability has been violated and that said regulations include Olivier's pre-affiliation income as group income, but exclude Olivier's pre-affiliation loss as group loss. Olivier further states that the heart of its claim rests upon a "cardinal principle" of taxation, "the pragmatic concept of annual accounting", the recognized and settled principle that the federal income tax system is based on an annual accounting. The defendant does not take issue with the principle of annual accounting, but merely states that said principle is not involved in, or violated by, said regulations.

The courts have uniformly held that the act of affiliation or disaffiliation so as to create a short taxable year for the subsidiary does not create a new taxable year for the subsidiary insofar as the carry forward or carry-back of a net operating loss is concerned, and that in the computation of said loss the annual accounting period of each affiliated corporation should be maintained, as each corporation is a separate taxpayer notwithstanding affiliation.[1]

There is no merit in the contention of plaintiff that the principle of annual accounting has been violated, and the cases upon which it relies lend it neither support nor comfort insofar as the issue involved in this case is concerned.

All contentions of Olivier seem to be fully answered by Trinco v. Commissioner, 1954, 22 T.C. 959. In that case Trinco filed separate returns for the fiscal years ending June 30, 1948, and 1949. On November 17, 1949, within its fiscal year ending June 30, 1950, Trinco acquired the stock of Minute Mop Corporation. In the consolidated return for fiscal year ended June 30, 1950, net losses were claimed for Trinco of $11,347.99 and for Minute Mop of $13,259.93. Trinco claimed a net operating loss carry-back for fiscal year 1948, in which it filed a separate return, of the Minute Mop loss of $13,259.93 sustained in fiscal year ending June 30, 1950. The court disallowed this carry-back, and stated:

"The petitioner's principal contention is that it is entitled to carry back to its taxable year ending June 30, 1948, and apply against its income for that year not only the loss which it sustained for the taxable year ending June 30, 1950, but also the loss sustained for the taxable year ending June 30, 1950, by its subsidiary, the Minute Mop Factory (Canada), Limited. We think that the deduction thus claimed on account of the loss sustained by the subsidiary is not allowable under the statute and applicable regulations. The problem is one that does not come to us without guidance from prior decisions.

"Section 23(s) of the Internal Revenue Code [26 U.S.C.A. § 23(s)] provides for the deduction of the net operating loss computed under section 122, which defines a net operating loss as well as the carry-back and the carry over to which the 'taxpayer' is entitled with respect to such loss. Under our tax laws each corporation is a separate taxpayer notwithstanding the relationship of parent and subsidiary. National Carbi[d]e Corp. v. Commis-

1. Woolford Realty Co. v. Rose, 1932, 286 U.S. 319, 52 S.Ct. 568, 76 L.Ed. 1128; Helvering v. Morgan's, Inc., 1934, 293 U.S. 121, 55 S.Ct. 60, 79 L.Ed. 232; Commissioner of Internal Revenue v. Hughes Tool Co., 5 Cir., 1941, 118 F.2d 474; Commissioner of Internal Revenue v. Riley Stoker Corp., 1 Cir., 1933, 67 F.2d 688; United States Paper Export Ass'n v. Bowers, 2 Cir., 1935, 80 F.2d 82; Marvel Equipment Co. v. Commissioner, 3 Cir., 1933, 67 F.2d 354, 355; Burnet v. Riggs National Bank, 4 Cir., 1932, 57 F.2d 980; Commissioner of Internal Revenue v. Krein Chain Co., 6 Cir., 1934, 72 F.2d 424, 426; Commissioner of Internal Revenue v. Van Camp Packing Co., 7 Cir., 1933, 67 F.2d 596, 597; United States v. Hoffman, 8 Cir., 1932, 61 F.2d 294.

sioner, 336 U.S. 422 [69 S.Ct. 726, 93 L.Ed. 779]; Interstate Transit Lines v. Commissioner, 319 U.S. 590 [63 S.Ct. 1279, 87 L.Ed. 1607]. Having selected the multiple corporate form as a mode of conducting business the parties cannot escape the tax consequences of that choice, whether the problem is one of the taxability of income received, as in the National Carbide case, or of the availability of deductions, as in the Interstate Transit case. And the separate identity of affiliated taxpayers is preserved notwithstanding the filing of consolidated returns. This was made clear more than 20 years ago in Woolford Realty Co. v. Rose, 286 U.S. 319 [52 S.Ct. 568, 76 L.Ed. 1128], where it was held that a net loss sustained by a corporation in 1925 could not be deducted in a consolidated return for 1927 so as to offset income of the parent corporation. The Court noted that under the applicable statute the term 'taxpayer' was defined to include 'any person . . . subject to a tax imposed by this Act,' and pointed out that 'A corporation does not cease to be such a person by affiliating with another.' 286 U.S. at p[age] 328 [52 S.Ct. at page 570]. The statutory provisions presently involved do not differ in any significant degree from those in the Woolford Realty Co. case to the extent that they affect the problem before us." 22 T.C. 959, 962.

"The conclusion that we reach is confirmed, if not compelled by regulations, which have a special importance in this type of case. The privilege of filing a consolidated return is accorded by section 141(a) of the Internal Revenue Code which, however, requires all members of the affiliated group to consent to the regulations prescribed under subsection (b) prior to the last day prescribed by law for the filing of such return; and section 141(a) further provides that the making of the consolidated return 'shall be considered as such consent.' Cf. Singer Sewing Machine Co., 5 T.C. 851, 855, affirmed [3 Cir.], 158 F.2d 982, certiorari denied, 331 U.S. 837 [67 S.Ct. 1520, 91 L.Ed. 1849]; Capital Service, Inc., v. Commissioner, supra [9 Cir., 180 F.2d 579]. The authority for the applicable regulations is conferred upon the Commissioner by section 141(b), and the regulations which he promulgated thereunder are Regulations 129. Pertinent provisions of Regulations 129 are set forth in the margin. We think it is plain from a fair reading of these regulations that the only loss that petitioner can use either as a carry-over or a carry-back to a year when it filed a separate return is merely that portion of the consolidated net loss attributable to its own affairs." (22 T.C. 959, 963)

To like effect is American Trans-Ocean Navigation Corp. v. Commissioner [2 Cir., 1956], 229 F.2d 97, wherein the Court stated in reference to the regulations herein involved:

"Section 141(b) of the Internal Revenue Code of 1939, 26 U.S.C.A., which is applicable here, provides that the Commissioner may prescribe regulations with respect to consolidated returns, and § 141(a) provides that the privilege of making a consolidated return shall be upon the condition that all the members of the affiliated group consent to all the regulations prescribed under § 141(b). It further provides that 'the making of a consolidated return shall be considered as such consent.'

\* \* \* \* \* \*

"These regulations plainly establish a scheme whereby only the part of a consolidated net loss which is attributable to a particular corporation can be used by that corporation as a carry-back to a year in which it filed a separate return. Since the taxpayer consented to

these regulations it is bound by them now. Charles Ilfeld Co. v. Hernandez, 1934, 292 U.S. 62, 65, 54 S.Ct. 596, 78 L.Ed. 1127. There has been no contention that this regulation is invalid nor is it inconsistent with anything in the governing statute. It is clearly within the Commissioner's wide power to prescribe regulations under § 141, Slater & Sons, Inc., v. White, 1 Cir., 1941, 119 F.2d 839. Since none of the 1949 loss was attributable to this taxpayer's operations, it is not entitled to carry the loss back to 1947." 229 F.2d 97, 98.

In Woolford Realty Co., Inc., v. Rose, 1932, 286 U.S. 319, 52 S.Ct. 568, 76 L.Ed. 1128, affirming 5 Cir., 1931, 53 F.2d 821, two Georgia corporations, Woolford and Piedmont filed an affiliated return for calendar year 1927. During that year Woolford had an income of $36,587.62 and Piedmont, the subsidiary, had a net loss of $453.80. Before its affiliation, the subsidiary had other net losses for 1925 and 1926, totaling $43,889.07. The Commissioner permitted the loss of $453.80 of the subsidiary sustained within the calendar year of affiliation, but refused to permit the deduction of loss suffered by the subsidiary in 1925 and 1926, prior to affiliation.

Mr. Justice Cardozo, speaking for the Court in denying such deductions, stated:

"Subtle arguments have been addressed to us in support of the contention that the loss of one affiliated company suffered in earlier years may be allocated to the other without infraction of the rule that the loss shall be carried forward. They are not lacking in plausibility, but we cannot hold that they comport with the directions of the statute, 'if we take words in their plain popular meaning, as they should be taken here.' United States v. Kirby Lumber Co., 284 U.S. 1, 3, 52 S.Ct. 4, 76 L.Ed. 131.

"Doubt, if there can be any, is not likely to survive a consideration of the mischiefs certain to be engendered by any other ruling. A different ruling would mean that a prosperous corporation could buy the shares of one that had suffered heavy losses and wipe out thereby its own liability for taxes. The mind rebels against the notion that Congress in permitting a consolidated return was willing to foster an opportunity for juggling so facile and so obvious. Submission to such mischiefs would be necessary if the statute were so plain in permitting the deduction as to leave no room for choice between that construction and another. Expediency may tip the scales when arguments are nicely balanced. True, of course, it is that in a system of taxation so intricate and vast as ours there are many other loopholes unsuspected by the framers of the statute, many other devices whereby burdens can be lowered. This is no reason, however, for augmenting them needlessly by the addition of another. The petitioner was prosperous in 1927, and so far as the record shows for many years before. Piedmont was unfortunate in 1927, and unfortunate in the years preceding. The petitioner, affiliating in 1927, has been allowed the loss suffered by Piedmont through the business of that year as a permissible deduction from the consolidated balance. What it claims is a right to deduct the losses that were suffered in earlier years when the companies were separate. To such an attempt the reaction of an impartial mind is little short of instinctive that the deduction is unreasonable and cannot have been intended by the framers of the statute. Analysis of the sections shows that there is no gap between what they wrote and what in reason they must have meant." 286 U.S. 319, 329, 52 S.Ct. 568, 570, 76 L.Ed. 1128.

■■■ The cases cited herein compel the conclusion that the pre-affiliation loss of the parent may not be offset against the post-affiliation income of the sub-

sidiary. The regulation plainly so providing is reasonable and consistent with the statute authorizing the same. Cf. Jones v. Commissioner of Internal Revenue, 5 Cir., 242 F.2d 616. On affiliation, Olivier has retained every statutory right and benefit which it had prior to affiliation. By filing a consolidated return, it it is not entitled to additional rights insofar as the loss carry-over provisions of the Code are concerned.

Judgment will be entered in conformity with this opinion.