A. R. RUPPERT PLUMBING & HEATING CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 84497.   Filed October 31, 1962.

*H. O. Hart* (an officer), for the petitioner.

*Eugene F. Reardon, Esq.,* and *Edward M. Fox, Esq.,* for the respondent.

#### OPINION.

ARUNDELL, *Judge:* Respondent determined a deficiency in income tax for the fiscal year ending September 30, 1954, in the amount of $16,291.34. Instead of a deficiency petitioner claims an overpayment in the amount of $4,544.83.

The only issue is whether income earned by a subsidiary corporation which filed a consolidated income tax return with its parent corporation (petitioner herein) can be offset by a net operating loss deduction resulting from the carrying over of net operating losses incurred by petitioner in taxable years during which the subsidiary corporation was not yet in existence.

The facts were stipulated and are so found.

Petitioner is a closely held corporation which was organized and incorporated under the laws of the State of Nevada on September 27,

1948. Its principal place of business is in Las Vegas, Nevada. On December 15, 1954, petitioner and its subsidiary hereinafter mentioned filed a consolidated corporate income and excess profits tax return for the fiscal year ended September 30, 1954, with the district director of internal revenue at Reno, Nevada.

During the taxable years herein involved, petitioner kept its books and filed its annual income tax returns on the basis of a fiscal year commencing on October 1 and ending on September 30.

Petitioner's principal activity since September 27, 1948, has been the conducting of a plumbing and heating contracting business.

During the fiscal years ended September 30, 1949, and September 30, 1950, petitioner incurred net operating losses in the amounts of $56,978.30 and $67,702.92, respectively. Petitioner filed separte income tax returns for the fiscal years ended September 30, 1949, and September 30, 1950, reporting such net operating losses, respectively.

Prior to September 30, 1950, the stockholders of petitioner were desirous of obtaining covering from a bonding company on certain anticipated business ventures. Because of the poor financial condition of petitioner, the stockholders felt that petitioner could not obtain bonding coverage.

On October 1, 1950, Ruppert Plumbing Co., Inc. (hereinafter sometimes referred to as the subsidiary), was organized and incorporated under the laws of the State of Nevada. In exchange for all of the subsidiary's stock, petitioner transferred to the subsidiary certain of petitioner's assets, including certain inventory items, land, and machinery.

Since October 1, 1950, and during the taxable years herein involved the subsidiary has kept its books on the basis of a fiscal year commencing on October 1 and ending on September 30. For each of the fiscal years ending September 30, 1951, through September 30, 1956, the subsidiary has been a member of an affiliated group of corporations consisting of petitioner and itself and, for each of said fiscal years, the subsidiary has joined with petitioner in the filing of a consolidated income tax return.

The subsidiary's principal activity since October 1, 1950, has been the conducting of a plumbing and heating contracting business in and around the vicinity of Las Vegas, Nevada.

Since October 1, 1950, petitioner and the subsidiary have continued to conduct their respective business activities throughout their respective fiscal years to and including the fiscal year ended September 30, 1956.

During the fiscal year ended September 30, 1951, petitioner earned net income, before any net operating loss deduction, of $26,853.50. For the same taxable period the subsidiary earned net income, before any net operating loss deduction, of $18,475.18. On their consolidated

income tax return for the taxable year, the corporations reported consolidated net income, before any net operating loss deduction, of $45,328.68. Against said consolidated net income, the corporations claimed a consolidated net operating loss deduction of $124,681.22, which deduction represented the carrying over of the net operating losses of petitioner for the 2 preceding years. As the result of the application of the claimed consolidated net operating loss deduction, the corporations reported no consolidated taxable net income and paid no income tax for the fiscal year ended September 30, 1951.

During the fiscal year ended September 30, 1952, petitioner incurred a net loss, before any net operating loss deduction, of $7,828.77. For the same taxable period, the subsidiary earned net income, before any net operating loss deduction, of $82,003.83. On their consolidated income tax return for said taxable year, the corporations reported consolidated net income, before any net operating loss deduction, of $74,175.06 ($82,003.83 minus $7,828.77). Against the consolidated net income the corporations claimed a consolidated net operating loss deduction in the amount of $79,352.54, which deduction represented the carrying over of the net operating loss of $67,702.92 sustained by petitioner during the fiscal year ended September 30, 1950, and the unused portion ($11,649.62) of the net operating loss of $56,978.30, sustained by petitioner during the fiscal year ended September 30, 1949, which had not been absorbed by the consolidated net income of $45,328.68 earned during the fiscal year ended September 30, 1951. As the result of the application of the claimed consolidated net operating loss deduction, the corporations reported no consolidated taxable net income and paid no income tax for the fiscal year ended September 30, 1952.

During the fiscal year ended September 30, 1953, petitioner incurred a net loss, before any net operating loss deduction, of $32,324.33. For the same taxable period the subsidiary incurred a net loss, before any net operating loss deduction, of $87,442.39. During the same taxable period, the corporations realized consolidated net capital gain of $60,160.25. On their consolidated income tax return for said taxable year, the corporations reported a consolidated net operating loss, before any net operating loss deduction, of $59,606.47 ($32,324.33 plus $87,442.39 minus $60,160.25).

During the fiscal year ended September 30, 1954, which is the taxable year herein involved, petitioner and its subsidiary earned consolidated net income, before any net operating loss deduction, of $106,898.86. Against that income the corporations claimed a net operating loss deduction of $64,832.25, which deduction allegedly represented the carrying over of the consolidated net operating loss in the amount of $59,606.47 sustained during the fiscal year ended

September 30, 1953, and the unused portion ($5,177.48) of the net operating loss of $67,702.92, sustained by the parent corporation during the fiscal year ended September 30, 1950, which had not been absorbed when applied against consolidated net income earned during the fiscal year ended September 30, 1952. The sum of the claimed carryovers which composed the claimed consolidated net operating loss deduction is actually $64,783.95 ($59,606.47 plus $5,177.48) rather than $64,832.25 as was claimed on the return. The difference of $48.30 resulted from a mathematical error.

On their consolidated income and excess profits tax return for the fiscal year ended September 30, 1954, after deducting the claimed net operating loss deduction, petitioner and its subsidiary reported consolidated taxable net income in the amount of $42,066.61 ($106,-898.86 minus $64,832.25). Based on their reported taxable consolidated net income in the amount of $42,066.61, the corporations reported an income tax liability in the amount of $17,215.97 and an excess profits tax liability in the amount of $1,303.88, or a total income and excess profits tax liability of $18,519.85. Said total tax liability was paid in installments on the following dates: On December 15, 1954, the sum of $8,333.93; on May 5, 1955, the sum of $5,622.52; on November 9, 1955, the balance of $4,563.40.

During the fiscal year ended September 30, 1955, petitioner and its subsidiary sustained a consolidated net operating loss in the amount of $6,001.75. On March 8, 1956, petitioner filed with the district director of internal revenue at Reno, Nevada, a claim for refund of income tax for the fiscal year ended September 30, 1954, in the amount of $3,240.95. On March 8, 1956, petitioner also filed a claim for refund of excess profits tax for the fiscal year ended September 30, 1954, in the amount of $1,303.88. These claims for refund were based on the carryback of the consolidated net operating loss for the fiscal year ended September 30, 1955, to the fiscal year ended September 30, 1954, and the application thereof in the earlier year as a consolidated net operating loss deduction from consolidated taxable net income reported for said earlier year. These claims for refund were disallowed by the respondent and no tax for the fiscal year ended September 30, 1954, has been refunded to petitioner.

During the fiscal year ended September 30, 1956, the parent corporation and the subsidiary corporation sustained a consolidated net operating loss in the amount of $34,323.43. Petitioner has filed no claims for refund with respect to, or resulting from, this consolidated net operating loss.

On September 29, 1959, respondent mailed the statutory notice of deficiency to petitioner. In arriving at this determination, respondent determined that petitioner had no unused net operating losses

available as carryovers to offset income and, accordingly, disallowed petitioner's claimed consolidated net operating loss carryover deduction in the amount of $64,832.25. However, respondent allowed petitioner the benefit of a consolidated net operating loss carryback deduction in the amount of $40,325.18, which deduction represents the carrying back of the consolidated net operating losses in the amounts of $6,001.75 and $34,323.43 sustained in the fiscal years ended September 30, 1955, and September 30, 1956, respectively.

A recapitulation of the net income (or loss) of petitioner and of its subsidiary and the consolidated net income (or loss) of both corporations, before any net operating loss deduction, for the fiscal years ended September 30, 1949, through September 30, 1956, are as follows:

| Fiscal year ended Sept. 30— | Petitioner | Subsidiary | Consolidated |
|---|---|---|---|
| 1949 | ($56,978.30) | | |
| 1950 | (67,702.92) | | |
| 1951 | 26,853.50 | $18,475.18 | $45,328.68 |
| 1952 | (7,828.77) | 82,003.83 | 74,175.06 |
| 1953 | (32,324.33) | (87,442.39) | [1] (59,606.47) |
| 1954 | (2) | (2) | 106,898.86 |
| 1955 | (2) | (2) | (6,001.75) |
| 1956 | (2) | (2) | (34,323.43) |

[1] $32,324.33 plus $87,442.39 minus a consolidated net capital gain of $60,160.25.
[2] Not shown for separate companies.

On the consolidated return for the fiscal year ended September 30, 1954, petitioner and its subsidiary claimed a net operating loss deduction of $64,832.25 thus reducing the consolidated net income from $106,898.86 to $42,066.61. The $64,832.25 was arrived at as follows:

Net loss of petitioner for FYE 9/30/49 _____ ($56,978.30)
Net loss of petitioner for FYE 9/30/50 _____ (67,702.92)

Total _____ (124,681.22)
Less consolidated net income for FYE 9/30/51 _____ 45,328.68

Unused net loss _____ 79,352.54
Less consolidated net income for FYE 9/30/52 _____ 74,175.06

Unused net loss _____ (5,177.48)
Add consolidated net loss for FYE 9/30/53 _____ (59,606.47)
Add error made by petitioner _____ (48.30)

Net operating loss deduction claimed by petitioner _____ 64,832.25

The only issue before us is whether the respondent erred in disallowing the claimed consolidated net operating loss carryover deduction in the amount of $64,832.25.

Insofar as petitioner's claimed net operating loss deduction is made up partly of the mathematical error of $48.30, we of course sustain the respondent.

The issue is thus narrowed to whether petitioner could carry over and deduct from the consolidated net income for the taxable year ended September 30, 1954, the consolidated net loss of $59,606.47 for the fiscal year ended September 30, 1953, and an alleged unused net loss of $5,177.48 from the fiscal year ended September 30, 1952.

By filing consolidated returns for the taxable years ended September 30, 1951 through 1956, petitioner and its subsidiary, under section 141(a), I.R.C. 1939,[1] consented to all the consolidated return regulations prescribed under section 141(b), I.R.C. 1939.[2] *Charles Ilfeld Co.* v. *Hernandez*, 292 U.S. 62.

In accordance with the congressional mandate, the Secretary prescribed Regulations 129 relating to consolidated income and excess profits tax returns (applicable to taxable years ending after December 31, 1949).

The first consolidated return here commenced October 1, 1950, and ended September 30, 1951.

Section 24.31(a)(3) of Regulations 129 defines the term "Consolidated net operating loss carry-overs" as follows:

The consolidated net operating loss carry-overs to the taxable year shall consist of—

(i) The consolidated net operating losses, if any, for the five preceding taxable years (not including as a third, fourth, or fifth preceding taxable year any taxable year beginning prior to January 1, 1950) to the extent that the consolidated net operating loss for any such preceding taxable year was not attributable to a corporation making a separate return * * *

and, with respect to a net operating loss sustained by a corporation in a taxable year for which a separate return was filed * * * *but subject to the limitations prescribed in section 24.31(b)(3)*,

(ii) The amount of the net operating losses, if any, of such corporation for the five preceding taxable years (not including as a third, fourth, or fifth preceding taxable year any taxable year beginning prior to January 1, 1950) to the extent that the net operating loss for any such preceding taxable year was not absorbed as a carry-over or carry-back by consolidated or separate net income for preceding or intervening taxable years.

[Emphasis supplied.]

---

[1] SEC. 141. CONSOLIDATED RETURNS.

(a) PRIVILEGE TO FILE CONSOLIDATED RETURNS.—An affiliated group of corporations shall, subject to the provisions of this section, have the privilege of making a consolidated return for the taxable year in lieu of separate returns. The making of a consolidated return shall be upon the condition that all corporations which at any time during the taxable year have been members of the affiliated group consent to all the consolidated return regulations prescribed under subsection (b) prior to the last day prescribed by law for the filing of such return. The making of a consolidated return shall be considered as such consent. * * *

[2] (b) REGULATIONS.—The Secretary shall prescribe such regulations as he may deem necessary in order that the tax liability of any affiliated group of corporations making a consolidated return and of each corporation in the group, both during and after the period of affiliation, may be returned, determined, computed, assessed, collected, and adjusted, in such manner as clearly to reflect the income- and excess-profits-tax liability and the various factors necessary for the determination of such liability, and in order to prevent avoidance of such tax liability.

Section 24.31(b)(3) sets forth the limitations referred to in section 24.31(a)(3), *supra*, as follows:

(3) *Limitations on net operating loss carry-overs and carry-backs from separate return years.* In no case shall there be included in the consolidated net operating loss deduction for the taxable year as consolidated net operating loss carry-overs under (a)(3)(ii) of this section (relating to the net operating losses sustained by a corporation in years for which separate returns were filed * * * an amount exceeding in the aggregate the net income of such corporation * * * included in the computation of the consolidated net income for the taxable year * * *

These regulations make it clear that carryovers of net operating losses sustained by a corporation in a separate return may be included in the computation of a consolidated net operating loss deduction *only to the extent of that corporation's contribution to the consolidated net income for the taxable year.*

The first consolidated return was filed for the fiscal year ended September 30, 1951. For that year petitioner contributed $26,853.50 to the consolidated net income of $45,328.68. Therefore, the only net operating loss allowable as a carryover for that year is the amount of $26,853.50 instead of the amount of $124,681.22 claimed by petitioner, and for that year the consolidated group had a net income, *after* the net operating loss deduction, of $18,475.18 instead of an unused net loss of $79,352.54.

The second consolidated return was filed for the fiscal year ended September 30, 1952. For that year petitioner had a net loss of $7,828.77. Therefore, there was no net operating loss allowable as a carryover for that year, and for that year the consolidated group had a net income of $74,175.06 instead of an unused net loss of $5,177.48.

The third consolidated return was filed for the fiscal year ended September 30, 1953. For that year the consolidated group had a consolidated net loss of $59,606.47 which petitioner claims as carryover to the succeeding fiscal year ended September 30, 1954, together with the claimed unused net loss of $5,177.48 for the preceding fiscal year ended September 30, 1952. In the preceding paragraph we held that for the fiscal year ended September 30, 1952, the consolidated group had a consolidated net income for 1952 of $74,175.06 instead of an unused net loss of $5,177.48. Therefore, petitioner had no unused net loss from the fiscal year ended September 30, 1952, to carry over to fiscal year ended September 30, 1954, and, under the provisions of section 24.31(a)(3)(ii) of Regulations 129, *supra*, the consolidated net loss of $59,606.47 could be allowed as a carryover to fiscal year ended September 30, 1954, only—

to the extent that the net loss for any such preceding taxable year [fiscal year ended September 30, 1953] was not absorbed as a carry-over or carry-back by

consolidated or separate net income for *preceding* or intervening taxable years. [Emphasis supplied.]

Section 122(b) (1) (B), I.R.C. 1939, provides that "If for any taxable year beginning after December 31, 1949, the taxpayer has a net operating loss, *such net operating loss shall be a net operating loss carry-back for the preceding taxable year."* (Emphasis supplied.) Also, section 122(b) (2) (B) provides:

> If for any taxable year beginning after December 31, 1949, the taxpayer has a net operating loss, such net operating loss shall be a net operating loss carryover for each of the five succeeding taxable years * * *. For the purpose of the preceding sentence, the net operating loss for any taxable year beginning after December 31, 1949, *shall be reduced by the amount, if any, of the net income for the preceding taxable year* * * * [Emphasis supplied.]

In other words, both under the regulations and the statute, petitioner is required to carry back the consolidated net loss of $59,606.47 for the fiscal year ended September 30, 1953, to the preceding taxable year and deduct it from the consolidated net income of $74,175.06 for that year and, since the entire net loss would be absorbed in the net income for the fiscal year ended September 30, 1952, nothing remained to be carried over to the fiscal year ended September 30, 1954.

As thus analyzed, it would appear that the respondent committed no error in disallowing the claimed consolidated net operating loss carryover deduction of $64,832.25 made up of the three amounts of $5,177.48, $59,606.47, and $48.30. See *Capital Service, Inc.* v. *Commissioner,* 180 F. 2d 579 (C.A. 9, 1950), affirming a Memorandum Opinion of this Court dated May 10, 1949; *Olivier Company* v. *Patterson,* 151 F. Supp. 709, and cases cited therein, affirmed per curiam 249 F. 2d 894 (C.A. 5, 1957). See also section 272(g), I.R.C. 1939, and section 6214(b), I.R.C. 1954, insofar as we have considered years prior to the fiscal year ended September 30, 1954.

Notwithstanding the aforegoing analysis, petitioner, in its brief, argues thus:

> At all times since October 1, 1950 Ruppert Plumbing Co., Inc. was owned, controlled and operated by the Petitioner, conducting the Petitioner's business for the sole benefit of Petitioner. Petitioner furnished all the capital of Ruppert Plumbing Co., Inc., and its management was under the direct supervision of the officers of Petitioner, and, due to the stock ownership, any profit or loss in Ruppert Plumbing Co., Inc. accrued to the benefit or detriment of Petitioner.

Respondent in his reply brief has interpreted this argument as an attempt on the part of petitioner to bring the instant case within the doctrine of a line of cases such as *Helvering* v. *Metropolitan Edison Co.,* 306 U.S. 522; *Newmarket Manufacturing Co.* v. *United States,* 233 F. 2d 493 (C.A. 1, 1956); and *F. C. Donovan, Inc.* v. *United States,* 261 F. 2d 470 (C.A. 1, 1958).

In an earlier case, *New Colonial Co.* v. *Helvering*, 292 U.S. 435, the Supreme Court had held that a successor corporation resulting by reason of a reorganization, was not the "same taxpayer" as its predecessor, and since a net operating loss deduction was available only to the "same taxpayer" who incurred the loss, the successor corporation was not entitled to carry over the predecessor's operating loss sustained prior to the reorganization.

The above line of cases were cases wherein the courts were of the opinion that the facts involved in those cases were such as to cause one of the corporations there involved to be treated in substance as the "same taxpayer" as another corporation and thus entitled to assume the latter's tax attributes.

We do not think the instant case falls within the above line of cases. In *Libson Shops* v. *Koehler*, 353 U.S. 382 (1957), the Supreme Court held that where 16 separate sales corporations operating retail clothing stores and one separate corporation providing managements services were merged into one corporation, surviving corporation was not entitled to carry over premerger loss of three merged corporations as an offset to postmerger income, since income was not produced by substantially the same business as produced the loss.

In the instant case we do not have the merger of one corporation into another corporation. Petitioner merely organized the subsidiary by transferring to it a part of petitioner's assets for all of the subsidiary's stock. The stipulated facts, in our opinion, do not warrant a finding that the businesses conducted by the two corporations were in substance the same business previously carried on by petitioner alone. This leaves the instant case within the rationale of such cases as *New Colonial Co.* v. *Helvering*, *supra*, and *Libson Shops* v. *Koehler*, *supra*. The subsidiary in the instant case is not the same corporate entity which incurred the net operating losses in the fiscal years ended September 30, 1949 and 1950. For these reasons the subsidiary cannot be the "same taxpayer" entitled to the use of a net operating loss deduction under the provisions of section 122 of the 1939 Code.

We hold, therefore, that the respondent did not err in disallowing the claimed consolidated net operating loss carryover deduction in the amount of $64,832.25.

*Decision will be entered under Rule 50.*