NIBUR BUILDING CORPORATION, AND ITS WHOLLY OWNED SUBSIDIARY, RALSTON STEEL CORPORATION, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 115-68.   Filed April 23, 1970.

*Max A. Reinstein*, for the petitioners.
*William L. Ringuette*, for the respondent.

OPINION

FAY, *Judge:* Respondent determined deficiencies and an overassessment in the Federal income tax of petitioners as follows:

| Year | Overassessment | Deficiency |
|------|----------------|------------|
| 1959 | | $8, 968. 60 |
| 1960 | | 30, 337. 69 |
| 1963 | $2, 211. 00 | |

The sole issue presented is whether the portion of a consolidated net operating loss attributable to a subsidiary can be carried back to offset the income of the parent corporation in a separate return year prior to incorporation of the subsidiary.

All of the facts have been stipulated. The stipulation of facts and the exhibits attached thereto are incorporated by this reference.

Petitioners are Nibur Building Corp. (Nibur) and its wholly owned subsidiary Ralston Steel Corp. (Ralston No. 2). Both petitioners at all times pertinent have been incorporated in Illinois and have had their principal places of business in Chicago, Ill. Prior to March 1, 1961, Nibur was known as Ralston Steel Corp. (Ralston No. 1). On March 7, 1961, its name was changed to Nibur Building Corp. On that same date Ralston No. 2 was organized and received from Ralston No. 1 certain assets in exchange for 3,000 shares of its stock. Nibur, formerly known as Ralston No. 1, thereby became the parent company, owning 100 percent of the outstanding stock of Ralston No. 2.

The assets which Ralston No. 1 transferred to Ralston No. 2 included: Office furniture and fixtures, automobiles, and warehouse equipment, as well as other assets required to engage in the purchase and sale of steel. The assets which Ralston No. 1, now known as Nibur, retained were the buildings and building equipment.

For taxable years 1959 and 1960 Ralston No. 1 filed separate Federal corporate income tax returns with the district director of internal revenue, Chicago, Ill. For taxable years 1961 through 1963, Nibur and its subsidiary, Ralston No. 2, filed consolidated U.S. corporate income tax returns with the district director of internal revenue, Chicago, Ill.

The returns filed for the years 1959, 1960, 1961, 1962, and 1963 by Ralston No. 1, and Nibur and Ralston No. 2, disclosed the following information:

| Year | Taxable income (or loss) | Tax reported | Type of return |
|------|--------------------------|--------------|----------------|
| 1959 | $130,574.66 | $62,398.82 | Separate.[1] |
| 1960 | 82,624.96 | 37,464.98 | Separate.[1] |
| 1961 | (100,678.59) | None | Consolidated.[2] |
| 1962 | (98,145.94) | None | Consolidated.[2] |
| 1963 | 6,909.39 | 2,211.00 | Consolidated.[2] |

[1] Ralston No. 1.
[2] Nibur and Ralston No. 2.

The 1961 consolidated net operating loss of Nibur and Ralston No. 2 in the aggregate amount of $100,678.59 was claimed by Nibur as net operating loss carryback deductions in the amounts of $2,738.17 and $97,940.42 against the taxable income of Ralston No. 1 in the years 1958 and 1959, respectively. Overpayments of corporate income tax by Ralston No. 1 for the year 1958 (separate return year) in the amount of $791.45 and for the year 1959 (separate return year) in the amount of $50,929.02, were received by Nibur based upon the Application for Tentative Carryback Adjustment.

On February 28, 1963, Nibur filed an Application for Tentative Carryback Adjustment requesting an overpayment of corporate income tax of Ralston No. 1 for the year 1959 (separate return year)

in the amount of $15,198.20 based upon a consolidated net operating loss deduction of $39,804.23, a carryback from the year 1962 (consolidated return year). The overpayment was tentatively allowed and paid to Nibur. Nibur also filed an Application for Tentative Carryback Adjustment requesting an overpayment of corporate income tax of Ralston No. 1 for the year 1960 (separate return year) in the amount of $30,337.69 based upon a consolidated net operating loss deduction of $58,341.71, a carryback from the year 1962 (consolidated return year). The overpayment was tentatively allowed and paid to Nibur.

The respondent in his notice of deficiency determined that the consolidated net operating loss of the affiliated group, as adjusted, was $94,204.35, in lieu of the $98,145.94 reported on the 1962 consolidated return. The notice of deficiency has allowed a net operating loss deduction for the year 1959 in the amount of $11,980, representing Nibur's portion of the 1962 consolidated net operating loss. The statutory notice of deficiency does not allow the remaining consolidated net operating loss deductions originating in the year 1962 incurred by Ralston No. 2 (in the amounts of $27,824.23 and $58,341.71) to be carried back to the years 1959 and 1960, respectively.

The sole issue presented is whether the portion of a consolidated net operating loss attributable to a subsidiary can be carried back to offset the income of the parent corporation in a separate return year prior to incorporation of the subsidiary.

The foregoing issue arises from the following series of events: For taxable years 1959 and 1960 Ralston No. 1 filed separate Federal corporate income tax returns. In 1961 Ralston No. 1 organized Ralston No. 2 and transferred certain assets to it in exchange for all its outstanding stock. Retaining the remaining assets, Ralston No. 1 changed its name to Nibur. For taxable years 1961 through 1963 Nibur and Ralston No. 2 filed consolidated corporate income tax returns. During 1962 both companies incurred net operating losses.

Respondent's regulations expressly cover the issue at bar.[1] Paragraph (b)(6) of section 1.1502–31, Income Tax Regs.,[2] requires the

---

[1] Since the taxable years before the Court commence prior to Jan. 1, 1966, the regulations governing herein are secs. 1.1502–0A through 1.1502–51A, Income Tax Regs. Compare Rev. Rul. 69–623, 1969–2 C.B. 171, which was issued pursuant to the regulations promulgated for taxable years beginning after Dec. 31, 1965.

[2] Sec. 1.1502–31(b)(6). *Apportionment of consolidated net operating loss.* If an affiliated group filing a consolidated return sustains a consolidated net operating loss within the provisions of section 172, relating to the net operating loss deduction, and if there are included as members of such group one or more corporations which made separate returns, or joined in a consolidated return filed by another affiliated group, either in a preceding taxable year or in a succeeding taxable year, the portion of such consolidated net operating loss attributable to such corporations severally shall be determined, such portion in the case of any such corporation being determined in an amount proportionate to the net losses (capital net losses and ordinary net losses alike) of the several affiliated corporations having net losses, to the extent that such losses were taken into account in the computation of the consolidated net operating loss.

apportionment of a consolidated net operating loss among those corporations which made separate returns in a preceding taxable year. Paragraph (d) (1)[3] of that section allows the carrying back of a consolidated net operating loss only to the extent attributable to the affiliated corporations which previously made separate returns. Thus, under the facts of our case, the regulations do not permit the carrying back of Ralston No. 2's portion of the consolidated net operating loss incurred in 1962 against income earned by Ralston No. 1 prior to the incorporation of Ralston No. 2.

These regulations must be held to control the result herein. Congress has provided in section 1501, I.R.C. 1954:

The making of a consolidated return shall be upon the condition that all corporations which at any time during the taxable year have been members of the affiliated group consent to all the consolidated return regulations prescribed under section 1502 prior to the last day prescribed by law for the filing of such return. The making of a consolidated return shall be considered as such consent. * * *

See *A. R. Ruppert Plumbing & Heating Co.*, 39 T.C. 284, 289 (1962).

The factual pattern in the case at bar closely resembles that of *Trinco Industries, Inc.*, 22 T.C. 959 (1954). For taxable years 1948 and 1949 Trinco Industries (Trinco) filed separate corporation income tax returns. Subsequently, Trinco acquired all the oustanding capital stock of one corporation and created another. During taxable year 1950 Trinco, as well as the newly created subsidiary, incurred net operating losses. Trinco and its two subsidiaries joined in a consolidated return for that year. We held that Trinco was not entitled to carry back the portion of the consolidated net operating loss attributable to the subsidiary against Trinco's taxable income for fiscal year 1948. To the same effect see *American Trans-Ocean N. Corp.* v. *Commissioner*, 229 F. 2d 97 (C.A. 2, 1956), affirming a Memorandum Opinion of this Court.

Petitioners point to Rev. Rul. 64–93, 1964–1 C.B. (Part 1) 325, as supporting their position. The ruling has a single factual variance from the case at bar. In the ruling the consolidated net operating loss

---

[3] Sec. 1.1502–31(d). *Net operating loss deduction, excess charitable contributions, excess section 175 deductions, and dividend carryover before or after consolidated return—* (1) *Net operating loss deduction.* The consolidated net operating loss of an affiliated group shall be used in computing the consolidated net operating loss deduction notwithstanding that one or more members of the group in the taxable year in which such loss originates make separate returns (or join in a consolidated return made by another affiliated group) for a subsequent taxable year (or in the case of a carryback computation for a preceding taxable year), but only to the extent that such consolidated net operating loss is not attributable to such corporation. Such portion of such consolidated net operating loss as is attributable to the several corporations making separate returns (or joining in a consolidated return made by another affiliated group) for a subsequent taxable year (or in the case of a carryback computation for a preceding taxable year) shall be used by such corporations severally as carryovers or as carrybacks in such separate returns or in such consolidated returns of the other affiliated group. * * *

of the affiliated group was carried back to years when the affiliated group filed a consolidated return. In the case at bar the consolidated net operating loss was carried back to a separate return year. Petitioners dismiss this factual difference. They note that of the corporations later comprising the affiliated group only Ralston No. 1 was in existence in the carryback years and so could not have been deemed by itself an affiliated group.

Petitioners' argument has considerable equitable appeal, but, appealing as it may be, it cannot survive in the light of the fact that section 1501 compels a taxpayer's consent to respondent's regulations upon making its consolidated return. Section 1.1502–31(d)(1) of respondent's regulations requires an apportionment of consolidated net operating losses for carrybacks only to separate returns or consolidated returns made by *another* affiliated group. According to the facts presented in Rev. Rul. 64–93 the carryback was to a consolidated return made by the *same* affiliated group. On the other hand, in the immediate case the carryback was to a separate return. In view of regulations section 1.1502–31(d)(1) this distinction is decisive.

*Decision will be entered for the respondent.*